No. 25,428.

THE STATE OF KANSAS, *Appellee*, v. E. BRUCE EMORY, *Appellant*.

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Information—Receiving Stolen Property—Charge Stated in Several Separate Counts.* Rule followed that a single criminal offense may be stated in divers ways in several separate counts of an information, and no prejudicial error is necessarily involved therein, although the defendant may be convicted on two of such counts, where sentence and judgment is imposed on him for one count only.

2. SAME—*Conspiracy—Evidence—Declarations of Coconspirators.* Rule followed that where a conspiracy is so far proved as to make the fact a jury question, evidence of the declarations and acts of the coconspirators are admissible in evidence so far as they pertain to the furtherance of their common criminal design, its consummation, the disposition of its fruits, and its concealment.

3. SAME—*Instruction—Possession of Recently Stolen Property.* The evidential significance attaching to the possession of recently stolen property was correctly stated in the instructions.

4. SAME—*When Evidence is Sufficient to Show Knowledge that Property Received Was Stolen.* In a criminal prosecution for the felonious crime of receiving stolen property, it is not a prerequisite to the state's case that the fact be proved beyond a reasonable doubt that defendant had actual knowledge that the property received by him was stolen property. It was sufficient for the state to prove beyond a reasonable doubt that defendant "had a belief that the property was stolen property, or that the defendant at the time he purchased or received the same had a reasonable suspicion from all the circumstances known to him at the time that the property was stolen property, and after such knowledge or reasonable

suspicion failed to use the circumspection usual with persons taking goods by private purchase." ·

5. SAME—*Evidence of Deceased Witness and Evidence of Absent Witnesses May Be Read to Jury.* The circumstances examined, and no error discerned in reading to the jury the testimony of a witness, since deceased, given at a former trial, nor in reading to the jury the testimony of other witnesses absent from the jurisdiction or whose whereabouts were unknown.

6. SAME—*Evidence that Absent Witness is Dead, Beyond Jurisdiction, or Cannot Be Found—Discretion of Trial Court.* The sufficiency of the showing that an absent witness is dead, beyond the jurisdiction or cannot be found is addressed largely to the trial court's discretion, and unless that discretion is abused the supreme court will not interfere.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed June 7, 1924. Affirmed.

*L. D. Moore,* of Winfield, for the appellant.

*C. B. Griffith,* attorney-general, *Donald W. Stewart,* assistant attorney-general, *C. H. Quier,* county attorney, and *S. M. Brewster,* of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The defendant was prosecuted and convicted on two counts of the offense of receiving solen Liberty bonds, knowing them to have been stolen. He was sentenced on one count only.

The evidence for the state tended to show that defendant had received various lots of Liberty bonds which had been stolen in daylight robberies from the Bartlett State Bank, the Benton State Bank, and from the Farmers State Bank of Wheatland, Okla. The robbers and their confederates and paramours concerned in these crimes were ascertained. Defendant's intimacy with some of them by telephone and personal conversation was shown; he lied to a policeman who made inquiry about them; he went all the way to New York city to sell the stolen bonds, notwithstanding there was a market in Wichita and Kansas City, where the market price of bonds was the same as in New York less a negligible charge for registration and transportation, and he falsely represented to the bond buyers in New York that he was a bond broker and that his address was Wichita Falls, Tex.

Among the various errors which are assigned, defendant complains of the splitting of the offense charged against him into two counts. Under our practice a pleader may charge the same criminal offense in divers ways and in several counts of a single

information so as to meet all anticipated contingencies of the evidence, and the fact that some respectable authorities in other jurisdictions, cived by defendant, hold otherwise is immaterial. (*The State v. Wheeler*, 95 Kan. 679, 680, 149 Pac. 701; *The State v. Bell*, 107 Kan. 707, 709, 193 Pac. 373.)  Moreover, while defendant was convicted on two counts, and this might possibly have justified two sentences to run either concurrently or successively, he was subjected to but one sentence, which may have been less than he deserved, but which certainly presents nothing of which he can reasonably complain.  (R. S. 62-1718; *The State v. Ricksecker*, 73 Kan. 495, 85 Pac. 547; *The State v. Mall*, 112 Kan. 63, 65, 209 Pac. 820.)  In *The State v. Yargus*, 112 Kan. 450, 211 Pac. 121, where a defendant was convicted of murder in the second degree, when the state's evidence showed only a murder by the administration of poison, an offense constituting murder in the first degree under our crimes act, this court upheld the judgment, not only on precedent but on principle.  It was there said:

"The weight of judicial opinion seems to favor the conclusion we have reached, but we base it not upon authority but upon the soundness of the principle that the defendant should not be allowed to derive an advantage from an error from which she suffered no injury, but, on the contrary, derived a benefit." (p. 454.)

In 16 C. J. 1106 it is said:

"As a general rule, where there is one good count sustained by the proof, a general verdict of guilty will be referred to and sustained by it, although there are other counts in the indictment which are defective or unsupported; but this rule does not apply where there is no defective count and distinct offenses are properly charged in different counts.  Thus, where there are two or more counts in the indictment, and but one offense in fact is charged, a general verdict of guilty is good if one of the counts is good and the allegations in it are sustained by the evidence.  It also has been held that a general verdict will be restricted so as to apply to a single count, and will be sufficient where it appears that the evidence in the case applies to that count alone, or where the court instructs the jury to disregard all but that count, or intentionally ignores and fails to instruct upon the other counts."

But without minimizing the general rule for which defendant contends—that a single offense cannot be split into separate parts and the offender prosecuted, convicted and subjected to separate sentences on each of the parts thus separated—it must be said that we have no such case here.  The county attorney could not know what the exigencies of the trial would develop.  The evidence might fail to prove that stolen bonds of the Bartlett State Bank came

culpably into defendant's hands, so he prudently framed another count covering the receipt of the stolen bonds of the Benton bank. Nor could the county attorney be sure that the evidence would not disclose transactions so different in character and detail that the law would imperatively require prosecutions therefor in separate counts. The error assigned is not sustained. (*The State v. Dilgar,* 111 Kan. 794, 797, 208 Pac. 620.)

Two specifications of error are based upon the admission of the evidence of coconspirators. Once the conspiracy is so far established as to make the ascertainment of the fact a jury question— and the order of proof is not necessarily important (*Drysdale v. Wetz,* 102 Kan. 680, 171 Pac. 653)—evidence of the declarations and acts of the coconspirators are admissible so far as they pertain to the furtherance of the common criminal design, to its consummation, to the disposition of its fruits, and to acts done to preserve its concealment. (*The State v. Johnson,* 40 Kan. 266, 19 Pac. 749; *The State v. Mullins,* 95 Kan. 280, 147 Pac. 828; *The State v. Richmond,* 96 Kan. 600, 152 Pac. 644; *The State, ex rel., v. Stout,* 101 Kan. 600, 606, 168 Pac. 902.)

In *The State v. Wheeler,* 89 Kan. 160, 164, 130 Pac. 656, it was said:

"Where a conspiracy is shown, acts indicative of a preparation to commit the crime, or preserve its fruits, may be shown, although they involve the commission of another crime. (*The State v. Adams,* 20 Kan. 311.)"

The record does not disclose any infraction of this principle in the admission of the evidence complained of.

Fault is found with the trial court's instruction touching the evidential significance attaching to the possession of recently stolen property, and it is urged that the court erroneously imposed on defendant the burden "to explain and show he came into possession of such bonds by honest means." It is argued that this instruction violated the rule that the state always has the burden in a criminal case, that the burden never shifts to the defendant, and that there is no such thing in criminal law as a *prima facie* case against the defendant. The same argument was made and answered in *The State v. Bell,* 109 Kan. 767, 771, 201 Pac. 1110, where a *prima facie* case of larceny of an automobile was established against defendant, in part by proof of his recent possession of the stolen property:

"It is of course correct that the court cannot shift the burden of proof to the defendant in a criminal case, but when the state has established a com-

plete *prima facie* case against him, the defendant is under the necessity of combating that *prima facie* case or of incurring the risk of conviction. He can take his choice. If this be properly characterized as a shifting of the burden of proof, it arises from the stern necessities of defendant's predicament and not because of any arbitrary rule of law imposed on him."

(See, also, *The State v. Cassady,* 12 Kan. 550; *The State v. Bratcher,* 105 Kan. 593, 185 Pac. 734; *The State v. Schaefer,* 111 Kan. 153, 204 Pac. 765; *The State v. Shanahan,* 114 Kan. 212, 217 Pac. 309; 34 Cyc. 528.)

An ill-founded complaint is made against another instruction which declared that it was not necessary for the state to prove beyond a reasonable doubt that defendant at the time he received the bonds had actual knowledge that they were stolen property, nor to prove to the same degree of certainty that defendant knew from whom or from where the bonds had been stolen. The court said:

"Upon this question of knowledge it is sufficient if the state has proven beyond a reasonable doubt that the defendant at the time he received or purchased, if he did receive or purchase, the property in controversy had a belief that the property was stolen property, or that the defendant at the time he purchased or received the same had a reasonable suspicion from all the circumstances known to him at the time that the property was stolen property, and after such knowledge or reasonable suspicion failed to use the circumspection usual with persons taking goods by private purchase."

This was a correct statement of pertinent law. (*The State v. Lewark,* 106 Kan. 184, 187, 186, Pac. 1002; *The State v. Minnick,* 113 Kan. 385, 387, 214 Pac. 111.)

The next error assigned pertains to the use of the testimony given at a former trial by a Mrs. Clark, wife of one of the bank robbers, and who had died in the interval between the trials. This testimony was admissible both by statute and by precedent. (R. S. 20-910; *The State v. Simmons,* 78 Kan. 852, 98 Pac. 277; *The State v. Stewart,* 85 Kan. 404, 116 Pac. 489.) Defendant contends, however, that the circumstances of this case should make an exception to the rule. He represents that at the first trial the name of this witness was indorsed on the information as a Mrs. Bessie Doe, which did not disclose her identity to him, and consequently he had not been prepared to cross-examine her thoroughly at the first trial, but that he had prepared interrogatories to be submitted to this witness at this second trial. We do not regard this circumstance as being so prejudicial to defendant as to have barred the use of the testimony of the dead witness. A suggestion is also made that the

showing of this witness's death or absence from the state was insufficient. This point has been duly considered, but it cannot be sustained. (*Gannon v. Stevens,* 13 Kan. 447.)

In *Gilmore v. Butts,* 61 Kan. 315, 318, 59 Pac. 645, it was said:

"The trend of modern authorities is to the effect that if the witness, though not dead, is out of the jurisdiction, or cannot be found after diligent search, or is insane, or sick and unable to testify, or has been subpœnaed but appears to have been kept away by the adverse party, his testimony given at a former trial may be received." (See, also, *The State v. Chadwell,* 94 Kan. 302, 146 Pac. 420; *The State v. Burton,* 101 Kan. 62, 165 Pac. 847; *The State v. King,* 102 Kan. 155, 158, 169 Pac. 557.)

That the testimony of other absent witnesses given at the former trial was also read in evidence is included under this assignment of error. Two of these absent witnesses concededly resided in other states, New York and Oklahoma, and there was testimony that the last known address of the third was in Missouri. The sufficiency of the showing that an absent witness is dead, beyond the jurisdiction or cannot be found is addressed largely to the trial court's discretion, and unless the record discloses that such discretion was abused, no prejudicial error can be based thereon. (8 R. C. L. 213-217.) On the showing that these witnesses were outside the jurisdiction, no reversible error was committed in permitting their testimony given at the former trial to be read to the jury.

The last error urged pertains to the overruling of defendant's motion for a new trial. It, too, was addressed to the trial court's discretion. The record has been carefully read, but it presents nothing redressible by an appellate court. Whether defendant was guilty as charged, or simply the unsophisticated and credulous dupe of the bank robbers who used him to market their ill-gotten gains, was a question for the jury and for the trial court. There was no lack of evidence to justify his conviction, and there is no error in the record of sufficient gravity to disturb the judgment.

Affirmed.