No. 37,447

THE STATE OF KANSAS, *Appellee*, v. LORRAINE LEIGH, *Appellant*.

(199 P. 2d 504)

Opinion filed November 13, 1948.

*Spencer A. Gard,* of Iola, and *Edward Rooney,* of Topeka, argued the cause, and *Spencer A. Gard,* of Iola, was on the briefs for the appellant.

*J. D. Conderman,* county attorney, argued the cause, and *Edward F. Arn,* attorney general, and *H. R. Fatzer,* assistant attorney general, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HOCH, J.: Appellant was convicted of stealing an automobile. Upon appeal he contends that the evidence was insufficient to support a verdict of guilty; that the trial court gave an erroneous instruction to the effect that unexplained possession of stolen property constitutes prima facie evidence of guilt; and that in view of the showing made, the court abused it discretion in denying his petition for a rehearing on the motion for new trial.

In an information filed on January 12, 1948, the defendant Lorraine Leigh was charged with the theft in Allen county on October 3, 1947, of an automobile belonging to one Ewell S. Johnson. At the trial on January 20, 1948, he waived arraignment and entered a plea of not guilty. The trial proceeded regularly and on the same day, January 20, 1948, the jury returned a verdict of guilty. Motion for new trial on the usual statutory grounds was filed on January 22, 1948, and overruled on January 24, 1948. Thereupon the state introduced evidence showing that the defendant had been previously convicted of a felony in Butler county, Kansas, on October 23, 1941, and given a penitentiary sentence. Defendant was then sentenced to a term in the penitentiary of not less than five nor more than thirty years.

On April 21, 1948, defendant filed a petition—to which further reference will presently be made—for a rehearing on his motion for new trial. Hearing was had on the petition on April 26, 1948, with introduction of various affidavits and arguments by counsel for both sides. In denying a rehearing and a new trial, the trial court said, among other things, that "the said newly discovered evidence is cumulative and for the most part would depend on testimony of witnesses who testified at the trial and is not of such character as to change the result of the action if a new trial were granted," and made a finding that the defendant had had a fair trial. This appeal followed.

Johnson, the owner of the automobile in question, testified that he drove the car to the U. B. church in Iola at about seven o'clock on the evening of October 3, 1947, to do some carpenter work and that about 7:30 p. m. he discovered that the car was gone; that he had left his keys in the car but had not given permission to anyone to use it; that he knew defendant by sight and had not given him permission to use it. The next time he saw the car was the following night, October 4, at which time it was standing on Highway 54 in Bourbon county, and that at that time the two rear fenders, the right running board and two left wheels were badly bent; that some of the gutter which runs around the top of the car had been torn off and was missing; and that none of these conditions had previously existed.

Witness E. S. Payne testified in substance that he ran a tourist camp and service station on Highway 54 west of Fort Scott, in Bourbon county; that he had seen the defendant before; that the first time he saw him, he and another man had had a flat tire just across the street from his station and came in to get it fixed, but he was busy at the time and could not fix it and that defendant then bought a used tire and inner tube. The next time he saw him was "on about the 3d of October, 1947"; that at about 9:30 in the evening on that day a car stopped and defendant got out of the car and came into the station and the car went on, and that he did not know who the driver was; that the defendant stated that he had run out of gasoline and had had a wreck, having turned the car over, and wanted some gasoline; that he got dressed and took gasoline, driving his own car, the defendant riding with him; that he found the car which was "a blue 1940 Mercury Ford" standing on one side of the road, and that he turned his car around with the

lights on the back of the other car in order to put gasoline into it; that the defendant got in and tried to start the car but it didn't start, and he pushed it until it started, and the defendant drove it into his station under the lights there; that the defendant told him about buying the car and that both of them got out and looked it over and he (the witness) stated: "Well, it's going to need a little fixing or a paint job," and defendant replied that he would get to it some of these days; that he noticed that at that time the right fender and the running board were bent under and that a piece of the gutter was gone; that the defendant then had on a leather jacket and a pair of khaki pants. He further testified that the time before when he had seen him, defendant had said he was a painter at Iola. Payne further testified that at a later date not disclosed by the record, he was shown a car in front of the courthouse in the presence of the sheriff and chief of police, at which time he identified it as the same car, and that at that time it was practically in the same condition as described when he saw it in the filling station.

Mack Percy, chief of police of Iola, testified that at 8:04 p.m. on October 3, 1947, Johnson reported his car stolen and that a search was instituted, and on the following evening the sheriff's office at Fort Scott reported that a car answering the description had been found abandoned on the highway in Bourbon county and that he, the sheriff, a highway patrolman, and Johnson went over to look at the car and found it to be the Johnson car. He testified that the car had been damaged in some sort of accident; that the fenders and running board were bent.

John A. Page, sheriff of Allen county, gave similar testimony stating that he saw the automobile about October 4, 1947, in Bourbon county, and that it looked like it had been in a wreck. Other testimony on the part of the state or of the defendant need not be recited at this point.

Appellant contends that the above evidence and particularly the testimony of Payne, the operator of the service station, identifying the defendant as being in possession of the stolen car on the evening of October 3, about two hours after it had been stolen, was not sufficient to sustain a verdict of guilty. It is true that Payne was the only witness who identified the defendant as being in possession of the stolen car soon after it was stolen. His identification, however, was positive, both as to the defendant and as to the car. Appellant calls attention to the fact that it was about three months after the

man called for gasoline at his filling station when he identified the defendant as being the same man and argues from that that the testimony is not convincing either as to identity or as to possession. This was a proper argument for the jury, and it would be strange if it were not argued by the capable attorney who defended him. Appellant further argues that no one testified that the defendant was seen driving the car from the place where it was stolen; that there was no evidence indicating whether the person supposed to be the defendant and who arrived at the service station came from the east or came from the west, nor whether the car for which Payne supplied the gasoline was headed west towards Iola or towards the east. Also the appellant urges that the conduct of the man who called at the filling station to get gasoline on the evening of October 3 was not that of a man who had stolen a car since he did not appear nervous or in a hurry; that after the gasoline had been supplied to the car, he returned with Payne to the filling station where he drove the car in under the lights and talked with Payne for some time before driving on. Again, all of this was a matter of evidence for the jury. It is not our function to weigh the evidence.

The defendant did not take the stand, and the trial court instructed the jury that his failure to do so did not raise any presumption of guilt and that it should not be referred to by the prosecuting attorney nor considered by the jury as affecting the question of his guilt or innocence, and that the jury should use great care not to comment in the jury room as to the defendant's failure to testify.

It has long been held in this state—although noting that the rule is not the same in all jurisdictions—that an unexplained possession of stolen property immediately or very soon after the property has been stolen places the burden upon the one in possession to explain the circumstance. The rule appears to have been first discussed at some length in the early case of *State v. Cassady*, 12 Kan. 550, in an opinion written by Justice Brewer. In that case the instruction under attack was that "the possession of stolen goods recently after they are stolen is a strong presumption of guilt." The court said:

"That the rule that possession of property recently stolen makes out a prima facie case of guilt, and throws upon the defendant the burden of explaining that possession, is one of long standing, and abundantly fortified by authorities, no one can question. . . . Such possession is said to raise a presumption of guilt, and, if unexplained, is sufficient to warrant a conviction. Some attempts have been made to qualify or limit this rule. In *State v. Hodge*, 50 N. H. 510, it was held that this presumption of guilt was not a pre-

sumption of law, but one of fact. In *People v. Chambers,* 18 Cal. 382; *People v. Ah-Ki,* 20 Cal. 177; *People v. Antonio,* 27 Cal. 404; and *Conkright v. People,* 35 Ill. 204, it was held that the recent possession of stolen property, unaccompanied by other circumstances of guilt, is not sufficient to warrant a conviction. In 3 Greenl. Ev. § 31, it is intimated that the rule as given in 1 Greenl. § 34, heretofore cited, is stated too broadly, and that perhaps there should be something more than recent possession to justify a verdict of guilty. Still, the overwhelming weight of authority is with the rule as stated; and, as fairly and reasonably interpreted, we think it ought to stand. It does not assume that there is any certain time possession within which is recent possession, and therefore proof of guilt. It is not the statement of an absolute and conclusive legal presumption. It is a presumption which is strong or weak according to the nature of the property stolen, the time and place of the larceny, the time within which the possession is shown, the manner of holding, and the various other conditions which, appearing in any case, give occasion for the application of the rule; for it must be remembered that a jury never passes upon this as an abstract question, isolated from facts and persons. A larceny must always be proved before there can be any presumption as to who is the thief. Now, when the larceny is proved, the possession may be shown so recently, so almost instantaneously, thereafter, as to render it morally certain that the possessor was the thief. To declare otherwise, would be to ignore all those facts of human experience and conditions of human action which support the rules of evidence. To instruct a jury that such a recent possession was insufficient to call upon the defendant for an explanation, and unexplained, to warrant a conviction, would insult the intelligence of every juror. As the time between the larceny and the possession is enlarged, the necessity of additional evidence appears, and in some cases the fact of possession may be but a slight circumstance indicative of guilt."

Syllabus 5 of that case reads:

"The possession of stolen property, recently after it is stolen, is prima facie evidence of guilt, and throws upon the possessor the burden of explaining such possession, and, if unexplained, *may* be sufficient of itself to warrant a conviction."

The rule announced in *State v. Cassady* has been discussed and followed in many succeeding cases. (*State v. Schaefer,* 111 Kan. 153, 204 Pac. 765; *State v. Shanahan,* 114 Kan. 212, 214, 217 Pac. 309; *State v. Emory,* 116 Kan. 381, 385, 226 Pac. 754; *State v. Miller,* 127 Kan. 487, 274 Pac. 245; *State v. Close,* 130 Kan. 497, 287 Pac. 599; *State v. Byrd,* 130 Kan. 668, 674, 288 Pac. 551; *State v. Grey,* 154 Kan. 442, 119 P. 2d 468; *State v. Dodd,* 156 Kan. 52, 54; 131 P. 2d 725).

Under the above rule, we are unable to say that the positive and uncontradicted testimony of Payne identifying the defendant as being in possession of the stolen car in an adjoining county within an hour or two after it was stolen was insufficient to make a prima

facie case. In this connection it may be noted that all of the court's instructions are not brought here, but we are advised by the appellant that the jury was instructed as to "presumption of innocence and reasonable doubt." Under the usual instruction, the jury would have to be convinced beyond a reasonable doubt, from the evidence, that the defendant was in possession of the stolen car soon after it was stolen.

Furthermore, assuming but not holding that the instant instruction as to unexplained possession was too broadly or otherwise improperly worded, the instruction is not reviewable upon this record. It was not objected to when given; it was not made one of the grounds for a new trial either in the first instance or in the petition for a rehearing on the motion for a new trial. It is true that one ground of error assigned in the original motion for a new trial was "error of law occurring at the trial and excepted to at the time by said defendant." But this instruction was not "excepted to at the time," and there is nothing to indicate it was argued. Furthermore, appellant relies upon the petition for rehearing, and in that petition the giving of this instruction was not assigned as error. Again, only instructions 5 and 7 are set out in the abstract, and we are only told what the subject of other instructions up to number 10 was and do not have them before us for examination. And we can only assume that there were no instructions beyond number ten. Unless an instruction to which an objection is made is a clear and prejudicial misstatement of the law, it can be reviewed only when other instructions which may or may not qualify its intent and effect are made a part of the record, in order that all may be examined together. (*Wheeler v. Jackson,* syl. ¶ 3, 132 Kan. 742, 297 Pac. 427; *Flournoy v. City of Parsons,* syl. ¶ 1, 159 Kan. 367, 155 P. 2d 421.)

Appellant's contention that the trial court abused its discretion in denying his petition for rehearing of his motion for a new trial requires further recital of the situation.

Appellant's sole defense was an alibi. In his opening statement to the jury, counsel for appellant stated that the defense would show that the defendant and a man named Jake Billbe, for whom defendant was working, were painting a postoffice at Neosho, Mo., on October 3; that they completed the job about 4:30 in the afternoon; that they went to Iola in Billbe's car; stopped for an evening meal in Fort Scott, and arrived in Iola about 7:30 in the evening; that

Billbe took appellant directly to his home; that his wife, daughter, and mother-in-law were there when he arrived; that being tired and cold from riding on the truck, he went to bed and to sleep; that he woke up about 10:30; that his wife fixed him something to eat and he went back to bed; that the evidence would show that the appellant didn't leave his home at any time on the evening of October 3.

At the conclusion of defendant's opening statement, the jury was taken from the courtroom upon the suggestion of the county attorney, and attention was then called to the fact that the defense had not complied with the requirements of the alibi statute (G. S. 1935, 62-1341). After hearing argument as to the admissibility of evidence to establish the alibi, the trial court said: "I think we better proceed. I am of the opinion that the alibi statute — Now, if he claimed he was down at Neosho, Mo., and wasn't up there at all or was in any place distant, that alibi statute would apply, but according to the statement he is right in the same vicinity and in the same county and the same city and I doubt if that statute is intended to apply in a case of that kind," and directed that the jury be called in. The evidence subsequently submitted for the purpose of establishing an alibi may be summarized as follows: Dorothy Leigh, wife of the defendant, and Barbara Trout, mother of Dorothy Leigh, and Mr. Billbe, testified substantially as heretofore indicated with reference to defendant's whereabouts on the evening of October 3. Billbe testified that to the best of his knowledge the painting job at Neosho was completed on the afternoon of October 3. He was then asked upon cross-examination whether he recognized the name of David M. Weens, and answered "No"; he then was asked whether he knew who the postmaster at Neosho, Mo., was, and replied that he knew the man who was postmaster, but could not tell what his name was. He also testified that to his knowledge he had never seen his signature. The county attorney then asked the witness to look at a document handed to him, and this testimony followed:

"Q. Now, Mr. Billbe, after having looked at that, what is your statement as to when this job was completed? A. After having looked at that I would say on the 2nd day of October."

The record does not show what the document was. Apparently there was no objection to this testimony.

The trial then proceeded to a conclusion heretofore indicated. It is clear that the trial court wrongfully admitted the alibi testimony.

The alibi statute (G. S. 1935, 62-1341) provides in substance that where an information sets out specifically the time and place where the offense is alleged to have been committed and the defendant proposes to offer evidence showing that he was in some other place at the time of the offense charged, he must give notice in writing to the county attorney as to his proposed defense and must endorse on the notice the names of witnesses whom he proposes to use in support of his contention. It further provides: "Unless the defendant gives the notice as above provided he shall not be permitted to offer evidence to the effect that he was at some other place at the time of the offense charged." Other provisions of the statute not here material need not be noted. Following the plain direction of the statute, we have held that compliance with the statute is a prerequisite to the admissibility of alibi evidence (*Burns v. Amrine*, 156 Kan. 83, 131 P. 2d 884). As heretofore noted, the trial court, in admitting the alibi evidence in spite of defendant's failure to comply with the statute, took the view that the alibi statute would apply if the defendant claimed he was in Missouri at the time but doubted whether it would apply in view of the fact that he claimed he was "right in the same vicinity and in the same county and the same city." We find nothing in the statute to justify that construction of the statute. The terms of the statute draw no distinction as to whether the defendant claims he was in the vicinity or some more remote place.

Following denial of the motion for new trial on January 24, 1948, the attorneys now representing the defendant entered the case, and on April 21, 1948, filed the petition for rehearing on the motion for new trial. The petition was based upon evidence alleged to have been newly discovered. In the petition it was alleged that the new evidence could not with reasonable diligence have been discovered and produced at the time of the trial. Various affidavits were submitted for the purpose of showing that the defendant was elsewhere and could not have been at the scene of the theft on October 3, 1947. It is unnecessary here to recite the allegations contained in the affidavits. It will suffice to say that the trial court gave consideration to the affidavits, heard the arguments of counsel, and found that the newly discovered evidence was cumulative in character; that in the most part it would depend upon witnesses who had testified at the trial and was not of such character as to change the result if a new trial were granted. The court then found that the defendant had had a fair trial and denied a new trial.

The granting or denial of a motion for new trial on the ground of newly discovered evidence rests largely in the sound discretion of the trial court. It must first be shown to that court's satisfaction that such evidence could not with reasonable diligence have been produced at the trial, and a party is not entitled to a new trial as a matter of right if the newly discovered evidence is merely cumulative in character, nor unless such new evidence, if believed, would in all probability have changed the result (*Turner v. City of Wichita*, 139 Kan. 775, 33 P. 2d 335, and cases cited on page 781; *King v. Consolidated Products Co.*, 159 Kan. 608, 157 P. 2d 541, and cases cited on pages 612, 613). Furthermore, appellate courts do not disturb the action of trial courts in denying a new trial merely because they may believe that a new trial might with propriety have been granted (*Pittman Co. v. Hayes*, 98 Kan. 273, 278, 157 Pac. 1193; *King v. Consolidated Products Co.*, supra, p. 612). Both in the information and in the evidence, the date of the theft was fixed as October 3 and the defendant was in no way taken by surprise in that regard. We cannot say upon this record that the trial court abused its discretion in denying a petition for a rehearing filed three months after the original motion for a new trial had been heard and denied.

We find no error and the judgment is affirmed.

WEDELL, J. (concurring): Counsel for appellant has made an exceedingly appealing argument for his client. A reversal of this judgment, however, would mean that a defendant could, prior to the first trial, conceal his intention to rely on an alibi and if unsuccessful in that trial, obtain a second trial in which he would for the first time serve the statutory notice. The statute was not intended to be used in that manner.

This particular case emphasizes, in a most striking manner, the importance of notice under the alibi statute. Here the state had only one eyewitness to establish appellant's identity. If an alibi was to be relied on as a defense it was most vital that the state should be apprised concerning it.

Next, in the absence of the statutory notice that appellant would rely on an alibi the discrepancy of alibi dates encountered by appellant in the trial was entirely immaterial. That is true for the reason that evidence of his presence elsewhere on either date was incompetent. Had appellant served the statutory notice and then honestly discovered there was a mistake in dates a wholly different

question would have been presented. That, however, is not this lawsuit.

Next, let us assume for the moment the trial court erred in holding the testimony offered on the motion for a new trial was cumulative. The testimony was nevertheless of a character which was incompetent without the statutory notice pertaining to a defense of alibi. The fact a court gives an erroneous reason for a correct ruling or judgment does not invalidate the ruling or judgment.

HOCH, J. (dissenting): In the light of the whole record, I think the trial court erred in not granting a new trial. The court did not base denial of the motion upon the ground that the new evidence could with reasonable diligence have been produced at the trial, but upon the grounds that the newly discovered evidence was *cumulative;* that for the most part it would depend on *testimony of witnesses who had testified* at the trial and that it was *not of such character as to change the result* if a new trial were granted.

In my opinion, the newly discovered evidence was in no real sense "cumulative" in character. Let us examine realistically the situation which confronted the defendant. More than three months after the car was stolen, he was charged with the theft. Unless we assume at the outset that he was guilty, what would he at once try to do? He would try to recall where he was on the evening of October 3, the date when the car was stolen. Unless we can put our finger upon some particular event or circumstance that will enable us to do it, how many of us could tell just where we were and what we were doing on some date three months before? I confess that very often I would be unable to tell, as to days much less than three months past. Coming upon a cancelled check given upon the day that he and Billbe, his employer, finished a painting job in Missouri, and noting that the check was dated October 3 (it subsequently appeared that the check was mistakenly dated and should have been dated October 2), he would naturally begin at once to recall what he did upon the evening of the date the job in Missouri was finished. As shown by the recital in the court's opinion, his alibi testimony related entirely to that. After this testimony had been admitted, the state showed that the Missouri painting job had been finished on October *2* and not October *3*. This left the defendant's alibi testimony wholly immaterial. It may well be said that in such a situation defendant's counsel, when thus taken by surprise, should have at least asked for a continuance. Whether at

that stage of the trial there was any chance of a continuance being granted, we need not speculate. In any event, and in view of subsequent developments, I think we should regard the defendant's situation in this respect with considerable leniency. What, if anything, was done to make a showing in the defendant's behalf on the first motion for a new trial, we do not know. It does appear, however, that other attorneys were employed who did start a search for evidence to show where the defendant was on the evening of October 3. As a result of that search they produced many affidavits substantial in character. In his affidavit Walter Trout stated that he went to Parsons on the evening of October 3, registered at the hotel there on that evening, and entered the hospital at Parsons the next day; that his son Herbert Trout, as a member of the Iola high school football team, left Iola in the afternoon of October 3 to take part in a game at Fort Scott that evening. The fact that Walter Trout registered in the hotel the night of October 3 was corroborated by the hotel owner from her hotel records and Walter Trout's admittance to the hospital on October 4 was corroborated by the surgeon in charge of the hospital. In her affidavit, Barbara Trout alleged that when she had given testimony as to the whereabouts of the defendant on the evening of October 3, she was relying upon the assumption that it was October 3 when the defendant returned from the painting job in Missouri. In her affidavit Dorothy Leigh made a similar statement concerning her previous testimony as to where the defendant was on the evening of October 3, and asserted that on the evening her brother Herbert Trout, a member of the Iola football squad, went to Fort Scott to play in a night game, being the day that her father went to Parsons to enter the hospital, she and her husband went to a picture show in Iola at about seven o'clock and that they left the picture show at 9:30 or a quarter of ten, and went to Cooksey's drugstore before going home. October 3 was shown in an affidavit of the Iola high school principal to have been the date when the football game in question was played. In his affidavit Billbe, the painting contractor for whom the defendant was working, stated that when he was consulted by Mr. Leigh as to the date when the painting job was completed in Missouri, he remembered that he had written a check at Neosho, Mo., on the day when the work there was finished, and on looking up his cancelled checks found it was dated October 3 and relying upon that date, he had stated that he and the defendant returned from Missouri on

October 3; that at the trial when he was shown an affidavit by the Neosho, Mo., postmaster that the painting job there had been completed on October 2, he then realized that he had put the wrong date on the check when it was written and had thus been later misled into believing that it was October 3 when the work was completed when, as a matter of fact, it must have been October 2. I do not see how this evidence can be considered *cumulative*. The fact that the defendant was somewhere else on *October 2* is in no way inconsistent with a contention that he was also somewhere else on *October 3*.

In the next place, I think it was hardly accurate to say that the submitted affidavits were in the most part by persons who had been witnesses at the trial. In addition to affidavits of persons heretofore referred to, several of whom had been witnesses at the trial, numerous affidavits were submitted to the effect that when the stolen car was examined on October 4, the glass in one of the front doors was partly shattered and on the glass remaining in the door there was a considerable amount of blood and a small amount of hair which appeared to be human hair; that the officers had taken samples of the blood and of the hair. There were affidavits of a number of persons stating that they were present when the defendant came to collect his week's pay as a painter on October 4, that he was there fifteen or twenty minutes, and they were certain that they would have observed any scratches, abrasions or injuries on or about his face or head if there had been such there and they saw none. In other affidavits submitted, there was also some pertinent evidence bearing on the issue of identification of the defendant as the man who called at the service station to get gasoline for a wrecked car, which need not be recited.

Next, I do not see how it can be said that the newly discovered evidence, if believed, was not of a character to change the result. The jury might not believe it, but if it did it would certainly have concluded that the defendant could not have committed the crime at the time the car was stolen.

As noted in the court's opinion, the trial court instructed the jury that possession of the stolen car soon after the theft took place threw the burden upon the defendant to explain such possession. In that instruction, the court did instruct the jury that if a reasonable doubt remained as to whether the defendant stole the property, he should not be convicted, but did not instruct that such

*possession* needed to be proven beyond a reasonable doubt. I doubt very much whether the instruction, standing alone, was proper. Standing alone, it assumed that the defendant *was* in possession of the stolen car soon after the theft, which was an essential fact to be proven. It is admitted that the court did give a general instruction as to presumption of innocence, of the necessity of being convinced beyond a reasonable doubt, but neither in its brief nor in the oral argument did the state contend that there was any specific instruction that the jury must be convinced beyond a reasonable doubt that the defendant was in possession of the stolen property soon after the theft. All this is said in full recognition of the well-established rule that instructions, unless clearly erroneous, are not subject to review unless we have all of the instructions before us for consideration as a whole. But again it seems to me that the very doubtful character of the instruction which assumes possession by the defendant of the stolen car should, in the light of the slender evidence upon which conviction was secured, have some weight in determining whether a new trial should be granted.

I agree fully with the view that the alibi testimony offered during the trial was inadmissible both under the statute and our decisions. But in spite of its admission the state secured a conviction. However, the fact that in this particular case the state was evidently not taken by surprise and was prepared to show upon cross-examination that the painting job in Missouri was finished on October 2 instead of October 3, does not cure the failure to observe the alibi statute. I am not unmindful of the difficulties encountered by prosecuting attorneys in meeting alibi evidence which is often not too hard for defendants to get and equally often not easy to disprove. The alibi statute was carefully drawn to meet a real need and we should do nothing to weaken it. As to a new trial, the affidavits gave notice as to time and place, and witnesses that would be used, and it is not to be assumed that the alibi statute would not have been complied with if a new trial had been granted.

Conviction in this case was secured solely upon the evidence of one witness who identified the defendant as the man who called at his gas station more than three months before to get gas for a stalled and damaged car, and who identified that car as the stolen car. The only way that sort of evidence could be met was by show-

ing that the witness must be mistaken in the identification because the defendant was elsewhere at the time. In so meeting it, the defendant naturally relied upon the accuracy of a date shown upon a cancelled check. By his discovery, during the trial, that the check had been wrongly dated, he wound up by only showing where he was on October 2, and with no evidence to show where he was on October 3. It is not apparent that this was through any fault of his own. I think he should have had a chance, in a new trial, to put the newly discovered evidence before a jury.

SMITH and COWAN, JJ., join in the foregoing dissenting opinion.