NOT DESIGNATED FOR PUBLICATION

No. 122,101

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM LYNN SEAMSTER,
*Appellant.*

MEMORANDUM OPINION

Appeal from Butler District Court; CHARLES M. HART, judge. Opinion filed February 5, 2021. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Amber R. Norris*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., POWELL, J., and MCANANY, S.J.

POWELL, J.:  After a trial to both the jury and the district court, William Lynn Seamster was found guilty of possession of methamphetamine, theft by possession of stolen property, and speeding. Seamster now appeals, challenging the sufficiency of the evidence to support his theft conviction as well as the propriety of the jury instructions and the district court's responses to the jury's requests for transcripts. After a careful review of the record, we find sufficient evidence supported Seamster's conviction for theft and the district committed no error in giving the jury instructions. However, we do find the district court's responses to the jury's requests for transcripts both unhelpful and

1

not meaningful, but such error was harmless and did not affect the outcome. Thus, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Jon Schrag lived in Oklahoma City but farmed at his residence in Kingman County, Kansas. After visiting family in Oklahoma for about a week, Schrag returned to his farm in Kingman County on October 12, 2018. Upon his arrival, Schrag noticed the padlock on his gate had been cut off. Schrag opened his garage and discovered his tan, four-wheel drive 1983 Toyota truck and a four-wheeler were missing. Schrag had bought the truck for $7,000 or $8,000 and had owned it for about 10 years. It was in good condition. Schrag testified that no one had permission to be in his garage or drive his truck. After his discovery, Schrag reported his truck stolen to the police in Kingman County.

Shortly after 5 a.m., on October 17, 2018, Officer Joel Sibley of the Rose Hill Police Department was conducting stationary traffic enforcement on the 700 block of South Rose Hill Road in Butler County, Kansas. Sibley spotted a truck driving 48 miles per hour in a 35-mile-per-hour zone and initiated a traffic stop. Sibley contacted dispatch, which informed him the license plate on the stopped Toyota truck belonged to a different vehicle.

Sibley made contact with the driver of the truck and asked for identification, but the driver said he did not have his license or proof of insurance. The driver told Sibley his name was William Seamster. After reporting the truck's vehicle identification number (VIN) to dispatch, Sibley learned the truck had been reported stolen out of Kingman County. Based on this information, Sibley detained Seamster and placed him in his patrol vehicle while he investigated the matter further. Dispatch confirmed to Sibley the truck was stolen, and Sibley looked through the truck for proof of ownership but found none. Sibley arrested Seamster and searched him.

2

Seamster told Sibley he had recently purchased the truck from his former boss, Chris Cope, for $2,000. Seamster was unable to produce a bill of sale at the stop, claiming he might have left it at home. Seamster told Sibley he had the key to the truck's door in his pants pocket but was unable to find it.

A Butler County Sheriff's Deputy arrived to help Sibley in photographing and inventorying the truck. Several items, including keys and power tools, were found in the truck. Seamster's driver's license was found in a backpack in the truck's bed.

After inventorying the truck and having it towed away, Sibley drove Seamster to the Rose Hill Police Department. After Seamster exited the vehicle at the police station, Sibley saw an object directly underneath Seamster's seat. Based on his training and experience, Sibley believed it was a small baggie containing methamphetamine. A KBI lab test confirmed his belief. Seamster admitted the baggie was his.

Seamster called Sibley a few days after his arrest and told him he would bring in the bill of sale for the truck but never did. When Sibley asked for contact information or an address for Cope, Seamster would not give him that information.

Seamster was charged with possession of methamphetamines, a severity level 5 felony; theft, a severity level 9 felony; and speeding, a traffic infraction.

At trial, Schrag was shown the photos taken by Sibley and identified the Toyota truck as the one stolen from his garage. Some of the tools and items found in the truck belonged to Schrag, while others did not. The photographs showed the steering column and ignition of the truck had been damaged. Schrag also testified the set of keys found in the truck console belonged to his other Toyota, a 1980 model, and various other locks on his farm, but the key to his stolen 1983 Toyota truck had never left his farm and had not been stolen.

3

Seamster also testified, claiming he bought the truck from Cope about a week and a half before the traffic stop. Seamster had known Cope for 15 years and trusted him based on other business dealings. Upon buying the truck, Cope gave Seamster a bill of sale and told him the title would be arriving in the mail, after which he would sign the title over to Seamster. Seamster testified Cope had accidently snapped off the key in the ignition when turning off the truck while they were on a test drive. Seamster told Cope he would take care of the problem. Seamster explained the damage to the steering column was because of his efforts to make the truck drivable with the compromised ignition system. Seamster testified he had a new ignition system in the truck to install but admitted on cross-examination the inventory did not contain the new ignition system.

Seamster testified he was going through a rough patch with his wife and had packed up his truck and was leaving town. Seamster did not realize his driver's license was in his backpack at the time of the stop. Seamster testified some of the items were in the truck when he bought it and he had purchased those items as well. Seamster claimed he had made efforts to find Cope after his arrest, but Cope's girlfriend told him Cope had left the area and Cope's mother told him Cope had left Kansas to avoid trouble with the IRS. Seamster never produced a bill of sale for the truck.

During deliberations, the jury asked to review transcripts of the testimony from certain witnesses. The district court informed the jury it would take days to produce such transcripts. Ultimately, the jury returned a guilty verdict for theft and possession of methamphetamines. The district court found Seamster guilty of speeding.

At sentencing, the district court imposed concurrent sentences of 13 months' imprisonment for possession of methamphetamines, 6 months' imprisonment for theft, and a fine for speeding but placed Seamster on probation from his sentences for 18 months.

Seamster timely appeals.

ANALYSIS

On appeal, Seamster does not challenge his speeding conviction. Seamster's claims of error focus on his jury trial, namely: (1) the evidence was insufficient to convict him of theft; (2) one of the jury instructions for theft was legally incorrect; and (3) the district court's responses to the jury's requests for transcripts of certain witness testimony were insufficient.

I.      WAS THE EVIDENCE SUFFICIENT TO SUSTAIN SEAMSTER'S CONVICTION FOR THEFT?

First, Seamster argues the evidence was insufficient to support his theft conviction. Seamster alleges the only evidence produced at trial to show how he came into possession of the truck was his testimony that he bought it legally from Cope. Seamster argues the State was required to show he knew the truck was stolen when it came into his possession and nothing refuted his belief that he bought the truck legally. The State counters that the jury clearly did not believe Seamster's testimony based on the verdict and there was sufficient circumstantial evidence to support Seamster's conviction, including the license plate belonging to another truck; no bill of sale; no insurance, title, or registration; the broken steering column and ignition cylinder; and no keys.

*Standard of Review*

When a criminal defendant challenges the sufficiency of the evidence, our standard of review is "'whether, after reviewing all the evidence in a light most favorable to the prosecution, [we are] convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [We] do not reweigh evidence, resolve

5

evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). A guilty verdict will only be reversed in the "rare cases when the court determines that evidence was so incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt." *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018).

*Analysis*

The United States Constitution guarantees a criminal defendant the right to demand the State prove each element of the charged crime beyond a reasonable doubt. *State v. Lacy*, 56 Kan. App. 2d 327, 330, 429 P.3d 245 (2018) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 [2000]). To determine what the State must prove, we look to the relevant statute. *Torres*, 308 Kan. at 488. Seamster was charged with a version of theft under K.S.A. 2018 Supp. 21-5801(a)(4)—essentially possession of stolen property—which provides that theft is "obtaining control over stolen property or services knowing the property or services to have been stolen by another" with the intent to permanently deprive the owner of the possession of the property.

A conviction may be based entirely on circumstantial evidence and any inferences reasonably deduced from that evidence. If an inference is reasonable, the jury can make the inference. *State v. Lowery*, 308 Kan. 1183, 1236, 427 P.3d 865 (2018). The key issue under K.S.A. 2018 Supp. 21-5801(a)(4) is whether Seamster knew the truck was stolen at the time he took possession of it. See *State v. Bandt*, 219 Kan. 816, 822, 549 P.2d 936 (1976); PIK Crim. 4th 58.020 (2017 Supp.).

Here, although the evidence was circumstantial, the State presented enough evidence from which a rational fact-finder could determine Seamster knew the truck was stolen when he took possession of it. When Sibley stopped Seamster, dispatch informed

6

Sibley the license plate on the truck belonged to a different pickup. Seamster had an object blocking the VIN, which Sibley asked him to move so Sibley could report the VIN to dispatch. The steering column was busted out and the ignition cylinder was on the floorboard. While Seamster claimed the key broke off in the ignition during the test drive and he had a new ignition cylinder in the truck to replace the broken one, on cross-examination, Seamster admitted the new ignition cylinder was not included in the inventory of the truck's contents. Seamster did not have the keys to the truck, and the keys found in the center console belonged to another vehicle and locks on Schrag's farm. Seamster claimed those keys did include the key to the truck door, but when Sibley asked Seamster if he had the keys, Seamster searched his pockets and ignored the keys sitting right beside him. Seamster did not have the truck's title, registration, or insurance. Seamster claimed he had the bill of sale but never produced it.

Seamster's only defense to this evidence was his unsupported claim that he bought the truck from his former boss, Cope. But when asked by Sibley to provide an address or phone number for Cope, Seamster was unable to do so. Seamster testified he spoke to Cope's mother, but she told him Cope had fled to escape trouble with the IRS.

Beyond his own testimony, Seamster presented no other evidence in support of his claims. By finding him guilty, the jury signaled it did not find Seamster credible. We are not permitted to reweigh witness testimony. *Chandler*, 307 Kan. at 668. Finally, Seamster's possession of the truck shortly after it was stolen can itself be sufficient evidence to support his conviction. See *State v. Taylor*, 54 Kan. App. 2d 394, 417, 401 P.3d 632 (2017) ("[W]hen the only evidence supporting a defendant's theft conviction is the possession of stolen property, our Supreme Court has held that such convictions may be upheld based on possession alone if the defendant provides an unsatisfactory explanation about why he or she has the property and the property was recently stolen. *Atkinson*, 215 Kan. at 143.").

When viewed in a light most favorable to the State, we conclude the evidence is sufficient for a reasonable fact-finder to find Seamster knew or should have known from the circumstances that the truck was stolen.

II.   DID THE DISTRICT COURT COMMIT A LEGAL ERROR BY GIVING JURY INSTRUCTION NO. 6?

For his second issue, Seamster alleges jury instruction No. 6 contained a legal error. Instruction No. 6 related to jury instruction No. 5's description of theft by receiving stolen property. Instruction No. 6, copied from PIK Crim. 4th 58.020, reads:

> "Knowledge that property has been stolen by another must exist at the time control first occurs and may be proven by a showing that the defendant either knew or had a reasonable suspicion from all the circumstances known to the defendant that the property was stolen."

Seamster argues the "reasonable suspicion" language contradicts the statute's requirement that a defendant know the property was stolen by another, thereby lessening the State's burden to prove knowledge beyond a reasonable doubt. Seamster alleges this allowed the jury to find him guilty by a lesser standard.

The State responds that Seamster's argument improperly casts the words "reasonable suspicion" consistent with search and seizure law when that is not how lay people understand the phrase. Instead, the words "reasonable suspicion" in the jury instruction refers to the defendant's common knowledge and experience.

*Standard of Review*

A party cannot claim error in the giving of a jury instruction unless the party objects before the jury retires to consider its verdict or the instruction was clearly erroneous. K.S.A. 2019 Supp. 22-3414(3). When reviewing jury instruction issues, we follow a three-step process by:

> "'(1) determining whether [we] can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal;
>
> (2) considering the merits of the claim to determine whether error occurred below; and
>
> (3) assessing whether the error requires, *i.e.*, whether the error can be deemed harmless.'[Citation omitted.]" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

The first and third steps are interrelated because whether a party has preserved the issue affects the third step's reversibility inquiry. 307 Kan. at 317. At the second step, we consider whether the instruction was legally and factually appropriate, employing a de novo standard of review. 307 Kan. at 318.

Here, Seamster only alleges jury instruction No. 6 was legally inappropriate. If an instruction is erroneous, our task is then to determine if the jury would have reached a different verdict without the error. *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014).

Seamster acknowledges he did not object to jury instruction No. 6. When a party does not object to a jury instruction in the district court, K.S.A. 2019 Supp. 22-3414(3) limits our review to whether the instruction was clearly erroneous. Clear error only occurs if "we are 'firmly convinced that the jury would have reached a different verdict

had the instruction error not occurred.'" *McLinn*, 307 Kan. at 318. The party claiming error has the burden to demonstrate prejudice. 307 Kan. at 318.

*Analysis*

Jury instruction No. 6 was based on PIK Crim. 4th 58.020 and included the pattern instruction's description that "knowledge that property has been stolen by another" may be proven by actual knowledge or that the defendant had a "reasonable suspicion from all the circumstances known to the defendant" that the property was stolen. The pattern instruction's Notes on Use direct courts to use this instruction with PIK Crim. 4th 58.010 (2017 Supp.), theft in violation of K.S.A. 2018 Supp. 21-5801(a)(4)—here jury instruction No. 5. When considering a claim that the giving of a jury instruction was an error, we do not consider that instruction in isolation but in light of the instructions as a whole. *State v. Dupree*, 304 Kan. 377, 394, 373 P.3d 811 (2016).

Seamster argues jury instruction No. 6 lessens the mens rea required to be proven by the State beyond a reasonable doubt. K.S.A. 2018 Supp. 21-5801(a)(4) requires the State to prove Seamster had knowledge the property had been stolen by another. Jury instruction No. 6 says this knowledge can be shown by actual knowledge or by showing Seamster should have had reasonable suspicion from all the circumstances to know the property was stolen. Seamster's complaint boils down to the argument that the jury instruction's definition of knowledge is a legal error because it lowers the knowledge requirement. Our precedents say otherwise.

Early cases addressing theft by receiving stolen property say a defendant having reasonable suspicion that such property was stolen is enough to prove knowledge. See, e.g., *State v. Marr*, 136 Kan. 602, 606-07, 16 P.2d 469 (1932) ("'To render one liable as an accessary after the fact . . . it has been held that if the accused had actual knowledge of facts which would give him good reason to believe the person assisted to be guilty of the

10

felony, this will be sufficient.'"); *State v. Emory*, 116 Kan. 381, 385, 226 P. 754 (1924) ("'Upon this question of knowledge it is sufficient if the state has proven beyond a reasonable doubt that the defendant at the time he received or purchased, if he did receive or purchase, the property in controversy had a belief that the property was stolen property, or that the defendant at the time he purchased or received the same had a reasonable suspicion from all the circumstances known to him at the time that the property was stolen property . . . .'"). Recent opinions from our court have continued to hold that "'reasonable suspicion from all the circumstances'" is sufficient to show a defendant possessed knowledge that the goods received were stolen. See, e.g., *State v. Stuber*, No. 116,051, 2017 WL 3327076, at *2 (Kan. App. 2017) (unpublished opinion) ([T]o prove defendant guilty of obtaining control over stolen property, State must prove at time defendant received stolen property, defendant "'had a belief or a reasonable suspicion from all the circumstances known to him that the property was stolen and that the act was done with intent to deprive the owner permanently of the possession, use or benefit of his property.' *State v. Lewis*, 256 Kan. 929, 933-34, 899 P.2d 766 [1995]."); *State v. Hurd*, No. 113,867, 2016 WL 3128771, at *4 (Kan. App. 2016) (unpublished opinion) (same).

*State v. Holt*, No. 106,711, 2013 WL 517657 (Kan. App. 2013) (unpublished opinion), is illustrative. In *Holt*, the defendant claimed the district court erred by instructing the jury that theft by receiving stolen property could be proved by showing he had a "'reasonable suspicion from all the circumstances that the property was stolen.'" 2013 WL 517657, at *7. The panel noted: "The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the [charged] offense." 2013 WL 517657, at *8. This protection prevents the State from using an evidentiary presumption in a jury instruction to relieve itself of the burden of proving every essential element of a crime beyond a reasonable doubt. 2013 WL 517657, at *8. The panel found the reasonable suspicion from all the circumstances

11

instruction did not create a mandatory presumption or a permissive inference because it did not instruct the jury that it may find the defendant knew the property was stolen based on proof of the predicate fact that the defendant had reasonable suspicion the property was stolen. The panel explained: "'Reasonable suspicion' is not a predicate fact; rather, the language is better understood as instructing the jury that the element of knowledge may be proven either by direct or circumstantial evidence. In either case, the burden of persuasion clearly remains on the State." 2013 WL 517657, at *9. While the *Holt* panel noted K.S.A. 21-3701(a)(4) and its predecessor statutes do not contain language indicating that knowledge may be proven by "'reasonable suspicion from all the circumstances known to the defendant,'" the panel recognized the Kansas Supreme Court has interpreted the statutes to that effect. 2013 WL 517657, at *9 (collecting cases). We agree.

As *Holt* explains, the use of the "reasonable suspicion" language in instruction No. 6 was not legal error. The State could prove Seamster's knowledge by showing he had reasonable suspicion from all the circumstances the property was stolen. Because there was no legal error, the giving of jury instruction No. 6 was not erroneous.

III.    DID THE DISTRICT COURT ERR IN ITS ANSWERS TO THE JURY'S MID-DELIBERATION QUESTIONS?

For his final contention of error, Seamster complains the district court's responses to the jury's mid-deliberation questions were inadequate and effectively denied the jury access to the evidence. During deliberations, the jury asked the district court three times for the testimony transcripts of one or more witnesses. Each time, with the consent of both the prosecutor and Seamster's trial counsel, the district court informed the jury how long it would take to create a transcript. Now, for the first time, Seamster argues these answers were not meaningful and were subtly misleading because they did not inform the jury it could get a read-back of the testimony instead of transcripts. The State rejects this

argument, asserting the district court did not ignore any questions from the jury and timely answered all questions.

*Standard of Review*

We apply the standard of review for jury instructions found in K.S.A. 2019 Supp. 22-3414(3) to questions asked after jury deliberations have begun. *State v. Hoge*, 276 Kan. 801, 817, 80 P.3d 52 (2003); see *State v. Saenz*, 271 Kan. 339, 352, 22 P.3d 151 (2001). Because Seamster did not object to the district court's responses to the jury's mid-deliberation questions, we review such responses for clear error. See *State v. Lewis*, 299 Kan. 828, 855-56, 326 P.3d 387 (2014). Under the clearly erroneous standard, the party raising an objection must demonstrate an error occurred and must show prejudice; the reviewing court must be firmly convinced the jury would have reached a different verdict without the error. *McLinn*, 307 Kan. at 318.

Our Supreme Court has explained that "'clearly erroneous' is not a standard of review . . . . Rather, it supplies a basis for determining if an error requires reversal." *Lewis*, 299 Kan. at 856. Broadly speaking, we evaluate the district court's responses to the jury's questions for an abuse of discretion. *State v. Novotny,* 297 Kan. 1174, 1186, 307 P.3d 1278 (2013).

> "[T]o the extent that it is necessary to determine whether the district court's response was a correct statement of the law, we are presented with a legal question, subject to unlimited review. But when looking at which legally appropriate response the court should have made, we accord the trial court the deference of looking to whether no reasonable person would have given the response adopted by the trial court." *State v. Wade*, 295 Kan. 916, 921, 287 P.3d 237 (2012).

*Analysis*

Three questions by the jury are at issue here. First, the jury asked: "Can we see testimony of Jon Schrag (court report)." The district court responded: "A transcript of Jon Schrag's testimony will take approximately two days to prepare." Neither party objected to the answer. Next, the jury stated: "We need the court report (transcript or audio recording) of the testimony of both William Seamster and Jon Schrag in order to reach a verdict." The district court responded: "There is no audio recording available. Preparation of a transcript of the testimony of William Seamster and Jon Schrag will take a number of days to present to the jury." Again, neither party objected. Finally, the jury wrote (on May 23, 2019): "Without the transcripts, we are at an impasse, forcing us to wait until they are made available." The district court answered: "The next available date for jury deliberations with the requested transcripts is Monday, June 3rd, 2019, commencing at 9:00 a.m." Neither party objected to the answer. The jury continued its deliberations and reached its verdicts later that day.

The district court is required to notify the parties of the content of a jury's question and give them an opportunity to discuss an appropriate response. The defendant must be present during this discussion, unless that presence is waived. Moreover, the district court must respond in open court or in writing while retaining the discretion to grant a jury's request to rehear testimony. K.S.A. 2019 Supp. 22-3420(d). A district court may not ignore a jury's request "'but must respond in some meaningful manner or seek additional clarification or limitation of the request.'" *State v. Miller*, 268 Kan. 517, 526, 997 P.2d 90 (2000). K.S.A. 2019 Supp. 22-3420(d) is breached only when the district court makes no attempt to provide a meaningful response or gives an erroneous response. Once the district court attempts to give a meaningful response or seeks clarification or limitation of the request, the review shifts to whether the sufficiency or propriety of the response constituted an abuse of discretion. 268 Kan. at 526.

14

Seamster argues the district court should have told the jury a read-back of portions of the transcript was available because K.S.A. 2019 Supp. 22-3420(d) permits the district court to allow the jury to rehear testimony in its discretion. He has a point. The Kansas Supreme Court has taken the position that "a trial judge has a duty to clarify whether a jury wants a transcript of testimony or merely wants a read-back . . . ." *State v. Bruce*, 255 Kan. 388, 396, 874 P.2d 1165 (1994); see *State v. Arevalo*, No. 89,968, 2004 WL 1373159, at *2 (Kan. App. 2004) (unpublished opinion).

In *State v. Myers*, 255 Kan. 3, 5, 872 P.2d 236 (1994), our Supreme Court relied extensively on our court's rationale that juries, as lay people, are unfamiliar with terms such as "transcript" or "read-back," and they would be unaware that transcripts are not readily and immediately available, making it imperative that a jury's request for testimony be interpreted on a common-sense basis. Stated the Court:

> "'[T]erms such as "transcript" and "read-back" are lawyer terms and a lay jury would not necessarily understand the terms. There is also no reason to assume the jury understood that no transcript is available until the court reporter transcribes the testimony taken in open court, that this transcription will not occur unless requested, and that the request for transcription usually occurs for appellate purposes after the trial is concluded and verdict returned. We can neither expect nor require lay jurors to speak proper legalese, nor can we expect them to ask questions in that format.

> "'We think a jury's request must be interpreted on a common-sense basis. What is obvious about this jury's request is that it wanted an opportunity to read or hear the requested testimony one more time before it reached a decision. It is far too simplistic to write off a jury's request as asking only for a transcript which was not available. At the very least, the trial court was obligated to make a meaningful response to the jury's question and advise it of its right to be given a read-back of the testimony.'" 255 Kan. at 5.

See *State v. Boyd*, 257 Kan. 82, 87, 891 P.2d 358 (1995).

15

We acknowledge that the law at the time *Myers* was issued contained a requirement that the requested evidence be read or exhibited to the jury while the scope and manner of such exhibition was left to the discretion of the district court. Today, no such requirement exists. Compare K.S.A. 2019 Supp. 22-3420(d) (jury's request to rehear testimony discretionary) with K.S.A. 22-3420(3) (evidence shall be read or exhibited to the jury). While our Supreme Court's command that the jury be advised of its right to a read-back has been superseded by the amended statute and the trial court is not required under the statute to offer a read-back or inform the jury of the option for a read-back, the need for a meaningful response to the jury which is not versed in the terms "transcript" and "read-back" remains. See *State v. Lewis*, No. 118,881, 2019 WL 2306629, at *5 (Kan. App. 2019) (unpublished opinion), *rev. denied* 312 Kan. ___ (September 25, 2020). Thus, the reasonableness of the district court's response in this context must be viewed through this prism.

Here, like in *Myers,* it is clear the jury wanted the opportunity to review the testimonies of the victim and Seamster before it reached a decision. Its repeated requests for such testimony and its statement that it would be unable to reach a verdict without such testimony make that obvious. While the district court's responses were accurate in that they correctly stated the time it would take to produce a transcript, they were not meaningful or helpful to the jury because the jury was not advised that a less onerous option for reviewing testimony existed—a read-back of at least portions of such testimony. The district court's responses strike us as an effort to stiff-arm the jury into reaching a verdict without the information it requested. Ultimately, it worked as the jury did reach a verdict. But under the facts of this case, given the jury's repeated requests to review certain testimony and its statement that it could not reach a verdict without such a review, we must agree with Seamster that the district court's responses here were inadequate and an abuse of discretion.

Because of the district court's error, we must examine whether the jury would have reached a different verdict but for the error. However, Seamster does not argue that the result would have been different. He merely states the trial was unfair. But under the clearly erroneous standard, Seamster has the burden to persuade us that the result of the verdict would have been different but for the error. His failure to even make an argument as to how the verdict would have been different constitutes an abandonment of this issue. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (issue not briefed is waived or abandoned).

Nevertheless, even if Seamster had made a vigorous prejudice argument, our review of the record fails to firmly convince us the jury would have reached a different verdict. Seamster admitted the methamphetamine was his, so the jury's guilty verdict on the possession count is not surprising. Moreover, it is clear from the record that the focus of the trial was on the theft charge. Even if the jury had had the opportunity to review the testimony it requested, we are not firmly convinced that it would have reached a different verdict. In fact, the jury's threat that it would not be able to reach a verdict without reviewing the requested testimony suggests that a more favorable outcome for Seamster was more likely, assuming a hung jury is favorable to a defendant. We suspect that is why Seamster's trial counsel never objected to the district court's final response. Counsel was possibly betting that the jury's inability to review the testimony increased Seamster's chance of an acquittal or a hung jury. The jury convicted Seamster of theft anyway. Given the strength of the evidence outlined above against Seamster, we are not firmly convinced the jury's verdict on the theft count would have been different but for the district court's error. We see no prejudice.

Affirmed.