LEON LEVI, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Stolen Goods :** RECEIVING OR BUYING. In this state the receiving or buying of stolen goods, with intent to defraud the owner, is not an accessory, but a substantive offense, and a conviction may be had without regard to the person who stole the goods, or from whom they were received.

2. ———. It is not necessary to show that the goods were received from the thief.

3. ———. And where received at several times, in pursuance of a conspiracy as to the particular goods, the values of the receptions may be aggregated in fixing the grade of the offense.

4. **Witness :** CROSS-EXAMINATION. In cross-examining a witness, it is not proper to put words into his mouth, nor to assume by the question that there is evidence of a fact when there is none.

ERROR to the district court for Douglas county. Tried below before SAVAGE, J.

3

*Walter Bennett,* for plaintiff in error.

1.   A receiver of stolen property must have received the property from some person who is guilty of the larceny as a principal offender, and if it be shown that he received the property from another receiver, he cannot be convicted.   1 Wharton's Criminal Law, § 990.   2 Bishop's Criminal Law, § 1140 and cases cited.   Desty's American Criminal Law, § 1476.

2.   The defendant was indicted for receiving property belonging to a corporation.   Proof of the corporate existence was necessary, and the refusal of the court to allow the defendant's attorney to cross-examine the witness as to his knowledge that it was an existing corporation was error.   *Cohen v. The People,* 5 Parker's C. C., 330. *Wallace v. The People,* 63 Ill., 451.   2 Russel on Crimes, 100.   *People v. Schwartz,* 32 Cal., 160.   *State v. Mead,* 27 Vermont, 722.

3.   Value of receptions cannot be aggregated in fixing grade of offense.   1 Wharton's Criminal Law, § 931.

It must affirmatively appear beyond a reasonable doubt, that the defendant knew that the property received by him had been stolen.   1 Wharton's Criminal Law, § 983. 2 Archbold's Criminal Practice and Pleading, 667.

*C. J. Dilworth, Attorney General,* for the State.

LAKE, CH. J.

The plaintiff in error stands convicted of the crime of receiving stolen goods, and he seeks to reverse the judgment upon several grounds, which we will consider in the order of their presentation.

In this state the receiving or buying of stolen goods is not an accessory, but a substantive offense, as will be seen by reference to the statute by which it is governed.

Section 116 of the criminal code provides that: "If any person shall receive or buy any goods or chattels of the value of thirty-five dollars or upwards, that shall be stolen or taken by robbers, with intent to defraud the owner;" * * * * "every person so offending shall be imprisoned in the penitentiary not more than seven years, nor less than one year." Comp. Stat., 681.

The jury found the value of the stolen property, which consisted of a lot of copper and brasses, to be fifty dollars; and this finding was fully justified by the evidence, although it is suggested indirectly that it was not.

The evidence shows that, but a few days before the prisoner was arrested under the charge of receiving the property, it had been stolen from the Union Pacific railroad company, but by whom does not appear. The prisoner bought and received it from one Bierbaum, but from whom the latter obtained it was not shown. Therefore the point is made that, inasmuch as it was not shown affirmatively that Bierbaum stole the property, the receiving of it from him was not within the statute. In other words that to make the crime of receiving stolen property, it must be shown that it was received from a person guilty of the larceny, and not from another receiver. And in support of this view we are referred to 1 Wharton's Criminal Law (8th Ed.), Sec. 990; 2 Bishop on Criminal Law, Sec. 1140, and Desty's American Criminal Law, Sec. 147.

The first of these citations does not sustain the position taken, and even the other two, although seeming to do so if we look to the text of the works alone, in view of our statute really do not, as will appear from an examination of the cases referred to by the authors in support of that doctrine.

One of these cases, *The State v. Ives*, 13 Iredell, 338, was decided under a statute which, as the court said, contemplated a receiving of the goods from the person who

stole them, who was the principal felon, and who was regarded in the light of an accessory. The court remarked that the statute "makes the receiver an accessory, and in case the principal is not amenable to the process of the law, such receiver may be prosecuted as for a misdemeanor. Consequently it is necessary to point out the principal, and the matter is involved in the doctrine of principal and accessory. This and many other omissions are remedied by the statutes, Will. III. and Geo. II., by which the act of receiving is made a substantive felony, without reference to the person who stole or the person from whom the goods are received."

Evidently this decision is not at all applicable to a statute like ours, which, as did the English statutes before alluded to, makes the act of receiving a substantive felony, without regard to the person who stole the goods, or ·from whom they were received.

The two Tennessee cases decide an entirely different question, and have no bearing upon the point to which they are cited by Mr. Bishop. They are *Cassells v. The State*, 4 Yerger, 148, and *Wright v. Same*, 5 Id., 154. All that they decide respecting the receiving of stolen property is, that under the statute of that state, "the receiving of goods, knowing them to be stolen, with the fraudulent intent at the time to deprive the owner of them, is a felony, although the guilty party may have been authorized by the owner of the goods to receive them for him." Clearly these cases have no application here.

Wright Nichols, a witness called on behalf of the state, having testified in chief that the property stolen "belonged to the Union Pacific railroad company," and that the company was "a corporation doing business in the state of Nebraska," on cross-examination was asked when he examined "the papers of the corporation?" But the question was rejected as being "improper cross-examination." The object of this question probably was to test the wit-

ness's knowledge of what he had said about the company being incorporated; but inasmuch as by its form the question assumed that he had seen and examined papers of the corporation bearing upon that subject, of which however there was no evidence, it was rightly excluded.

While very great latitude is permissible, and should be given, in cross-examinations, it ought not to be indulged to the extent of assuming that a witness has made a statement which he has not, or that there is evidence upon a particular point when there is none, for this would be equivalent to putting into his mouth the very words which it is desired that he shall acknowledge or repeat by his answer as his own, which is generally regarded as an objectionable mode of examination. 2 Phillips on Ev. (Cowen & Hill's and Edwards' Notes), 910.

There is also one of the instructions given to the jury assigned for error. This instruction pertained to the valuation of the property feloniously received, and was to the effect that if the several acts of receiving were in pursuance of a conspiracy between the prisoner and Bierbaum "to purchase brass and copper stolen from the railway company, then the jury would be justified in finding as the value of the goods received the aggregate sum of the purchases made pursuant to such conspiracy."

We see nothing wrong in this instruction. Besides, it does not appear from the record to have been excepted to. However, we think it stated the law correctly, and was applicable to the evidence. That there was an arrangement between the prisoner and Bierbaum of the character suggested by this charge is pretty evident, even from the testimony given on behalf of the defense. That the prisoner knew very well that the copper and brasses belonged to the railroad company, and were stolen, is placed beyond all reasonable doubt. In addition to the testimony of the detective that he was willing and offered to purchase such goods with the understanding that they had been stolen,

that of the prisoner himself, and of one at least of his own witnesses, is strongly corroborative of the fact that he did so.

The prisoner testified that he saw the mark of the company on some of the brasses. And William Benton, who worked for him at the time, and assisted in packing the goods for shipment, swore that he asked the prisoner "what would he do about it" if he got into trouble. The answer was that he would hold Bierbaum responsible. This witness also testified that the prisoner was in the habit for a while of purchasing these articles from boys "in the night time," which the prisoner, however, denied, and swore that he obtained it all from Bierbaum. But in respect to this matter Benton is fully supported by the witness August Gromm, called on the part of the defense, who swore that the prisoner did receive such articles at his place of business, from boys, "after dark," until "Speigle had told him that he was buying crooked stuff, then he stopped a little while." Gromm also testified, on cross-examination, to having seen Bierbaum and the prisoner carry articles of the description of those in question from the house of the former to that of the latter. That while the property was received by Bierbaum during the night, "they never moved it out of Bierbaum's place until in the morning." But, it is clear from the evidence that there was no necessity for aggregating purchases in order to bring the value of the property above thirty-five dollars. The prisoner himself swore that three checks given by him to Bierbaum, for $49.70, $50, and $40 respectively, were in payment "for the copper and brass." So that taking either one of the three purchases from Bierbaum alone, even at his own valuation, which was much below that of the disinterested witnesses who testified on this point, and probably less than half its real worth, the value exceeded considerably the amount necessary to sustain the conviction. On the whole we see no reason for a new trial, and the judgment must be affirmed.

JUDGMENT AFFIRMED.