### Shuttles v. Commonwealth.

(Decided January 11, 1921.)

Appeal from Boyle Circuit Court.

1. Receiving Stolen Goods—Indictment and Information—Variance. —In an indictment for receiving stolen goods it is only necessary

that the owner of the goods be named and a variance is immaterial where the indictment specifically describes the property stolen which it charges the defendant with receiving.

2.  Receiving Stolen Goods—Indictment and Information—Sufficiency. —In an indictment for receiving stolen goods it is not necessary to allege that it was the purpose of defendant to permanently deprive the owner of the use thereof, where it is averred that the receiving of the goods was done unlawfully, wilfully and feloniously.

3.  Criminal Law—Accomplices—Corroboration.—The case was properly submitted to the jury as the evidence of the accomplice was sufficiently corroborated.

JOHN S. OWSLEY, J. W. HARLAN, CHENAULT HUGUELY and C. C. BAGBY for appellant.

CHAS. I. DAWSON, Attorney General, and T. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellant Shuttles, who was convicted in the Boyle circuit court for the crime of knowingly receiving stolen goods and his punishment fixed at five years' confinement in the penitentiary, appeals to this court seeking a reversal of the judgment upon the grounds: (1) Variance between the averments in the indictment and the evidence; (2) the indictment was insufficient in several particulars; (3) the instructions of the court to the jury were erroneous.

The indictment accuses Shuttles of feloniously receiving a large number of cartons of cigarettes stolen from the possession of the Southern Railway Company or the Cincinnati, New Orleans & Texas Pacific Railway Company, common carriers, in February, 1920. At that time the railroads were under the control of the Director General of Railroads of the United States, and it is argued in brief of counsel for appellant that since the railroads were in the possession and under the control of the Director General that the goods, if stolen, were not so taken from the Southern Railway Company or the C., N. O. & T. P. Railway Company, as averred in the indictment and as the evidence tends to show. The Southern Railway Company, although in the possession and under the control of the Director General, did not lose its entity or identity, and it was possible for the theft to have been committed by taking the property from that corporation even though it was under the con-

trol of the Director General. The same is true of the
C. N. O. & T. P. Railway Company. Aside from this
there is no merit in this contention, for we have held in
more than one case that the owner of goods need not
be named in an indictment, under section 1199, and
further that if named, a variance is immaterial if the in-
dictment specifically describes the property stolen and
which it charges the defendant with receiving, knowing
the same to have been stolen. Commonwealth v. Mc-
Garvey, 158 Ky. 570; Newton v. Commonwealth, 158 Ky.
4.

The second objection to the indictment is based upon
its failure to allege that Shuttles received said goods
with the intention of permanently depriving the owner
of the use thereof. Such an averment is wholly unnec-
essary in an indictment for this crime where it avers
that the receiving of the stolen goods was done unlaw-
fully, wilfully and feloniously, as in this case. Such
an averment would be necessary in an indictment for
larceny, but the gravamen of this crime is knowingly and
wilfully receiving goods known by the receiver to have
been stolen, all of which must be with a felonious intent.
When one knowingly receives stolen goods he is guilty
of the offense denounced by section 1199, if he does so
feloniously. It is not, therefore, necessary for the in-
dictment to allege that the receiver of the stolen goods
acted with a purpose to permanently or at all deprive
the owner of the goods.

Appellant next insists that the court should have di-
rected the jury to find and return a verdict finding him
not guilty because the material allegations of the in-
dictment were not sustained by the proof. The gist of
this contention is that the evidence of McKenzie, an ac-
complice who testified for the Commonwealth, was not
corroborated in many particulars and being unsupported
was insufficient to warrant the court in submitting the
case to the jury. With this contention as to lack of cor-
roboration we do not agree. The evidence shows that
the cigarettes which were stolen from the railway com-
pany at Danville, Kentucky, were packed in paper car-
tons at Winston Salem, N. C., and there loaded in a cer-
tain B. & O. car and consigned to Kansas City, Missouri;
that the cartons were each marked by the shipping clerk
in such way as to be identified. Before the car left Win-
ston Salem, N. C., it was sealed both by the railway

company and the shipper of the cigarettes. When it arrived at Danville, Kentucky, the seals were unbroken, but within a few hours after its arrival at Danville and before it left next morning the seals were broken and it was again sealed by the railway company before leaving Danville. On reaching its destination at Kansas City the car was examined and found to be sealed, but when opened a number of cartons of cigarettes were missing, thus establishing beyond doubt that the theft was committed at Danville, Kentucky. The car arrived at Danville in the early morning hours of February the 23rd, 1920, and it left that point about 8:30 o'clock a. m. While the consignment of cigarettes was in the Danville railroad yards one Stringer applied to a citizen of the city named Goode to be allowed to store some packages in his coal house or wood house. This application was made at night time and the permission granted. Next day Goode testifies he discovered a large number of packages of the character in which the cigarettes were packed, stored in his coal house. They were in the way and he requested Stringer to remove them. At a late hour that night Goode was aroused by the noise of an automobile near his coal house, and getting up he discovered that a man named McKenzie with two other persons were loading these cartons of cigarettes into the automobile. He recognized the voice of one of the other men as that of Robert Shuttles, a brother of appellant. Next day the cartons of cigarettes were gone. These same cartons of cigarettes were found concealed in the room of appellant. Other witnesses testify to the transfer of cartons containing cigarettes from the room in which appellant lived, to the Curry Grocery Company, a wholesale concern at Harrodsburg, and it is established by that concern that it purchased a large quantity of cigarettes from appellant, paying him therefor by check, $1,050.00, and the cigarettes thus purchased were the same brand as those stolen at the Danville railway yards, and the cartons bore the initials and other identification marks placed on the cartons shipped from Winston Salem in the B. & O. railroad car consigned to Kansas City, and which was broken open at Danville, and appellant was wholly unable to satisfactorily show from whom he obtained so large a quantity of cigarettes nor why he had them stored in his room.

McKenzie, testifying for the Commonwealth, admits that he was an accomplice, relating the facts with reference to the location of the car containing the cigarettes in the Danville. railway yards and the spotting of it by Stringer who is charged with the theft. He further testified to assisting his brother, Robert Shuttles, and Stringer in removing the cigarettes from the coal house of Goode in the night time to the room of appellant, who received them and immediately cut off the label so as to prevent identification. This, he says, happened after twelve o'clock at night. He further says that he received a considerable sum of money for his part in the affair. All this is denied by appellant but it is sufficiently corroborated by other proven facts as to make it well nigh overwhelming and to leave no doubt of the guilt of appellant.

We think the provisions of section 241 of the Criminal Code, requiring the evidence of an accomplice to be corroborated, were sufficiently complied with and that the court did not err in so holding and submitting the case to the jury.

The indictment does not accuse Robert Shuttles and John A. McKenzie, or either of them, of the theft, nor does it name anyone as the thief, but it does charge that Shuttles and McKenzie were in possession of the stolen goods and that Clyde Shuttles received the stolen goods from his brother and McKenzie with the knowledge that the goods had been stolen. The court, therefore, instructed the jury that if it believed from the evidence beyond a reasonable doubt that Clyde Shuttles before the finding of the indictment unlawfully, wilfully and feloniously received and accepted from Robert Shuttles and John A. McKenzie, or either of them, a lot of cigarettes of the Camel brand which was then and there of value greater than twenty dollars, and which had been stolen from the C. N. O. & T. P. Railway Company and the Southern Railway Company, or either of said companies, and that said companies were in possession of said cigarettes as common carriers for transportation and delivery, and which cigarettes were not the property of Robert Shuttles and John A. McKenzie, or either of them, and were taken against the will and without the consent of said carrier or carriers, or the owners thereof, and that Clyde Shuttles at the time he received said goods knew that same had been stolen and were unlaw-

fully in the possession of Robert Shuttles and John McKenzie, or either of them, and received said cigarettes with the felonious intent to convert the same to his own use and permanently deprive the owners of same against their consent, to find the defendant guilty. This instruction was more favorable to appellant than the law warrants. The court also told the jury that a conviction could not be had upon the testimony of John A. McKenzie, an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense and the corroboration is not sufficient if it merely shows the offense was committed and the circumstances thereof. In addition to this the court gave the usual instruction on reasonable doubt. The jury was, therefore, well advised as to the law of the case.

Under section 1199, whoever receives stolen goods, the stealing whereof is punished as a felony or misdemeanor, knowing the same to be stolen, shall be liable to the same punishment to which the person stealing the same is by law subjected. The language of this statute does not admit of the construction sometimes put upon a somewhat similar statute by courts of other states, wherein it is held that the receiving of stolen goods must be from the thief himself, and not from another person who received them from the thief. We can think of no reason why such a construction should be placed upon this statute, or one of a similar import. The intention of the legislature in enacting it was to prevent persons from knowingly and feloniously receiving stolen goods, whether from the thief himself or from one who had received them from the thief. It would make no difference through how many hands the stolen goods passed, if the person charged with receiving them did so knowing same to have been stolen. The terms of our statute, section 1199, are so broad as to exclude the idea that the goods must be received from the thief himself, for it says, "whoever shall receive any stolen goods, the stealing whereof is punished as a felony or misdemeanor, shall be liable to the same punishment to which the person stealing the same is by law subjected." No intimation whatever is given that the goods must be received from the thief. We, therefore, think the contention of appellant that the appellant should have been discharged because the stolen cigarettes were not re-

ceived by him from Stringer but from others, is without merit.

No error appearing to the prejudice of appellant the judgment is affirmed.