No. 24,445.

THE STATE OF KANSAS, *Appellee,* v. CHARLES MINNICK, *Appellant.*

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Receiving Stolen Property—Evidence.* The evidence is held to support a conviction upon a charge of knowingly receiving stolen property.

2. SAME—*Evidence of Defendant's Possession of Other Stolen Goods Admissible.* In a prosecution for receiving stolen goods it is held that no error was committed in admitting evidence of the defendant's possession of other goods stolen at about the same time and received by him from the same person.

3. SAME—*Proof that Defendant Received the Stolen Goods From the Thief Not Necessary to Convict.* To justify a conviction upon a charge of knowingly receiving stolen goods it is not necessary to prove that the defendant obtained them from the thief; they do not lose their character as stolen goods merely by passing into other hands.

Appeal from Smith district court; WILLIAM R. MITCHELL, judge. Opinion filed April 7, 1923. Affirmed.

*R. W. Turner, R. B. Turner,* and *Donald F. Stanley,* all of Mankato, for the appellant.

*C. B. Griffith,* attorney-general, *John F. Rhodes,* assistant attorney-general, and *Miles Elson,* county attorney, for the appellee; *R. C. Postlethwaite,* of Mankato, of counsel.

The opinion of the court was delivered by

MASON, J.: Charles Minnick appeals from a conviction on the charge of knowingly receiving certain clothing stolen from J. A. Miller.

There was evidence tending to show these facts: The clothing was stolen, with a quantity of other goods, from Miller's store at Red Oak on the night of September 24, 1921. On the afternoon of October 14, 1921, a party of officers went to the defendant's home to look for some tobacco that had been stolen from the store of J. B. Johnson at Mankato about September 15, 1921. The defendant at first denied having any tobacco, but later "got a pitchfork and got up in the haymow of the barn and pitched off about half a ton of hay and uncovered" a quantity of tobacco, which the party took. He testified that the hay he pitched off had been scratched over the tobacco by the chickens and kicked over it by the children at play. He said at the time the tobacco was uncovered that he got it from a man he did not know.' At the trial he testified he bought it from his brother-in-law, admitting that his first story was not true. He said he paid $28 for it. The tobacco he claimed to have obtained in this way was worth $100. The lids had been taken from the cases so that the dealer's name was not on them. One witness, however, saw Johnson's name stenciled on one of the boxes. The brands were the same as those stolen from Johnson. One of the party asked the defendant if he didn't know the tobacco was stolen and he answered that he thought so.

About eight o'clock on the evening of the same day the party returned to the defendant's place with the owner of the stolen clothing. The defendant was not at home. About an hour later he came home in an automobile, started to turn in, and then turned back into the road and drove on. The party followed in their car. Two bundles, which proved to contain a part of the goods stolen from Miller, were shortly thrown from the defendant's car. The defendant at first said he had bought the clothing at Red Cloud, Neb. Later he said his brother-in-law had brought it out to him. He also said he had been over to his uncle's to get him to take the goods, but as he had refused, he was bringing them back when he saw the visitors at his place and concluded to get away. He later told the county attorney that when his brother-in-law left the goods with him he told him "they were having some trouble at Red Cloud over

these stolen goods and he wanted to leave them with him until the trouble blew over."

1. We regard the evidence as abundantly justifying the conviction. It was not necessary for the prosecution to show that the defendant knew to whom the goods belonged or to have absolute knowledge of their having been stolen. It was enough on this point for the jury to be satisfied that the goods were in fact stolen and that from the facts shown to the defendant, he must have understood that he was acquiring stolen property, and acted upon that understanding. (*The State v. Lewark,* 106 Kan. 184, 187, 186 Pac. 1002.)

2. The principal contention of the defendant is that all the evidence concerning the tobacco should have been rejected. The evidence was of course not admissible merely as showing the defendant to have been guilty of another offense, but if it tended to prove him guilty of the offense for which he was on trial it was not rendered incompetent from its laying another crime at his door. If it was admissible it was in spite of its tendency to show him guilty of another offense and not because of it. We think the circumstances that the defendant obtained the tobacco and the clothing from the same person, and in each instance attempted concealment and falsely accounted for his possession, establishes a sufficient apparent relation between the two transactions to warrant the admission of the evidence. The authorities are not in entire harmony on the subject, but there is abundant support for this view. (1 Wigmore on Evidence, § 324; 34 Cyc. 525; 17 R. C. L. 88; Note, 6 A. & E. Ann. Cas. 917; Ann. Cas. 1913 D. 166.) An instruction was given that the evidence regarding the tobacco could not be considered at all unless the jury believed it was stolen and received by the defendant knowing it to be stolen, and this only for the purpose of ascertaining his mental attitude, knowledge or intention. This protected him from any improper use that might otherwise have been made of the evidence.

3. Complaint is made of the refusal to give an instruction to the effect that to be guilty of the offense charged the defendant must have received the stolen goods while they retained their character as such—"under circumstances which connect him with the thief." Under the influence of common-law conceptions or the language of particular statutes, it has sometimes been held that to render one guilty of the offense in question the property must have been re-

ceived from the thief and not from one who had received it from the thief. (2 Wharton's Criminal Law, § 1237, 11th ed.; 2 Bishop's Criminal Law, § 1140, ¶ 5; *Foster v. The State*, 106 Ind. 272.) Our statute defines the offense as the receiving of stolen goods knowing them to be stolen. (Gen. Stat. 1915, § 3465.) Under such a statute the receiving of the goods from the person who stole them is clearly not a necessary ingredient of the crime. (*Levi v. The State*, 14 Neb. 1.) We are in accord with the modern and majority view in holding that stolen goods do not lose their character as such merely by passing from the possession of the thief into that of some one else, but only by coming into the control of the rightful owner, a typical instance being where the owner intercepts them in the hands of a carrier on the way from the thief to the receiver and suffers them to proceed for the purpose of entrapping him. (34 Cyc. 518; Note, 9 L. R. A., n. s., 263; *The State v. Alderman*, 83 Conn. 597; *Shuttles v. Commonwealth*, 190 Ky. 176; *Coppertino v. United States*, 256 Fed. 519; *United States v. Cohen*, 274 Fed. 596.) There was nothing in the evidence to suggest that the clothing received by the defendant had ceased to be stolen property, and therefore no occasion existed for giving an instruction on the subject.

Other requested instructions, so far as correct and pertinent, were substantially covered in the general charge.

The judgment is affirmed.