[No. 30830.   Department One.   July 21, 1949.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES J. SALLE, *Appellant*.[1]

[1]Reported in 208 P. (2d) 872.

*Warner, Pierce & Peden,* and *Herbert Danz,* for appellant.

*Charles O. Carroll, Robert B. Allison,* and *Stuart G. Oles,* for respondent.

STEINERT, J.—Defendant was charged, in each of three counts of an amended information, with the crime of grand larceny. The jury before which he was tried returned verdicts of guilty upon the first and third counts, and a verdict of not guilty upon the second count. From the judgment of conviction and sentence upon the two verdicts of guilty, defendant appealed.

All of the evidence in the case was adduced by the state, and the facts established thereby, as the jury could have found them, are substantially as we shall here relate them.

First, with respect to count one: On or about December 31, 1947, a comptometer of the value of $525 was stolen from the office of a manufacturer's sales and service agency in the city of Seattle. The loss was promptly reported to the local police department. However, the identity of the thief has never been definitely determined. About the middle of January, 1948, one Frank Fry, who was then in possession of the machine, sold it to the appellant herein, James J. Salle, for the sum of $25. Appellant knew at the time he bought it that it was stolen property. Shortly thereafter, appellant sold the comptometer for the sum of $20 to one Albert R. Merrill, who conducted a wholesale and retail surplus business in Seattle. About a week later, Merrill delivered the machine, for resale, to one Scaggs, a gasoline station attendant, and Scaggs in turn disposed of it to one Dittebrand, a real-estate salesman, in whose possession the machine was found by Seattle detectives on or about February 9, 1948.

Next, with respect to count two: Sometime prior to September 10, 1947, a .22 automatic Winchester rifle, valued at $57.50, was stolen from a hardware store in Seattle. The theft was immediately reported to the police, but the thief has never been apprehended. About that same time, how-

ever, an individual known as Lefty McKee, having come into possession of the rifle, sold it to appellant for the sum of $30. Appellant retained the gun in his possession, keeping it in a closet in his home, where it was found by the detectives in February, 1948.

Next, with respect to count three: On or about October 27, 1947, an electric calculating machine was stolen from the office of a tank and welding concern in Seattle. The machine had been purchased in 1945 at a price of $378.53. The theft was at once reported to the police department. Although the identity of the thief was never fully determined by the authorities, appellant, by his own admission, had reason to believe that the machine was stolen property at the time he bought it from one Gowers, sometime after January 1, 1948, paying $25 therefor. About a week later, appellant sold, or offered to sell, the calculating machine to one Holmes for the sum of $40. Holmes took charge of the contrivance and kept it in the basement of his home until the early part of February, 1948, at which time he turned it over to the police, who had called to inquire about it.

On the evening of February 9, 1948, two Seattle detectives, who had been investigating the theft of the comptometer and who had found the machine that same day in the possession of Dittebrand, called at the home of appellant in Seattle and placed him under arrest. Appellant at once admitted that he had bought the comptometer knowing it had been stolen.

The detectives then instituted a search of the premises. Appellant accompanied them in the exploration, telling them that a number of things in the house were stolen property. As the detectives gathered together various articles located about the house, appellant indicated those that were "hot" and those that were "not hot." The hot articles were loaded into a prowler car and, with appellant, were taken to police headquarters. These hot articles included a portable typewriter, a camera, a magnifying glass, an electric drill, four air sanders, an electric iron, a desk pen and sev-

eral pen and pencil sets, an envelope of old gold, and one bottle of pure gold cylinders.

In addition to these articles, designated by appellant as "hot," the detectives also took along a .22 Winchester rifle, which is the subject of count two herein. Although appellant had not pointed out the rifle as "hot," he told several stories concerning it, and for that reason the detectives included it with the other articles. A list of these hot articles was subsequently read to the jury by one of the detectives as part of his testimony.

On February 11, 1948, after appellant had been arrested and while in custody, and after the police had recovered and were in possession of all the articles described in the three counts of the amended information, appellant made three separate statements with reference to the comptometer, the Winchester rifle, and the calculating machine, respectively. These statements were taken down serially in writing and were signed by appellant. In the statement with reference to the comptometer, appellant said that he knew at the time he purchased it that it was a stolen article. In the statement with reference to the rifle, he merely identified the gun, saying that he had purchased it from Lefty McKee for $30. In the statement with reference to the calculating machine, he said that he had bought it from Joe Gowers and George Turpin for $25 and later had sold it to a person by the name of Chuck for $40.

On February 14, 1948, appellant was again questioned by the police with reference to the three counts of the amended information, and separate wire recordings were made of the questions addressed to, and the answers given by, him pertaining to each of the articles alleged to have been stolen. These wire recordings were "played" before the jury, reproducing the questions and answers. In the recording with reference to the comptometer, appellant admitted positively that he knew, at the time he purchased the machine, that it was stolen property. In the recording with reference to the rifle, he declared just as positively that he did not know, at the time he purchased it, that it had been stolen, but thought

it was "on the up and up." In the recording with reference to the calculating machine, he stated that at the time he purchased it he had reason to believe that it had been acquired through theft.

The evidence hereinbefore narrated was supplied in its entirety through witnesses produced by the state. Appellant did not testify, nor did he offer any evidence whatever. The jury found him guilty of the charges respecting the comptometer and the calculating machine, but found him not guilty of the charge with reference to the Winchester rifle.

The statute under which this action was prosecuted is Rem. Rev. Stat., § 2601 [P.P.C. § 117-47], which, so far as is material here, reads:

"Every person who, with intent to deprive or defraud the owner thereof—   .   .   .

" (5) Every person who, knowing the same to have been so appropriated, shall bring into this state, or buy, sell, receive or aid in concealing or withholding any property wrongfully appropriated, whether within or outside of this state, in such manner as to constitute larceny under the provisions of this act —

"Steals such property and shall be guilty of larceny."

Appellant lists his assignments of error under four headings. The first is that the trial court erred in denying appellant's motion for a new trial. This assignment of error involves three points, each point being discussed separately.

Appellant's first alleged point of complaint is that the trial court erroneously, and over appellant's objection, permitted one of the police officers, in his testimony, to relate the conversation which took place between the officer and appellant at the time and place of the latter's arrest. In that conversation, as related by the officer, appellant designated various articles in the house as being "hot" or "not hot"; these articles have been enumerated or referred to above. Appellant's contention is that such testimony constituted evidence of collateral crimes, and he relies upon the general rule that, when a defendant is charged with a particular crime, evidence of a collateral crime is inadmissible.

■ That rule, however, has its well-defined and well-recognized exceptions, as where the element of motive, intent, identity, guilty knowledge, or a systematic scheme or plan is involved. In such instances, evidence of similar transactions may, in proper cases, be received to establish a constituent element of the crime charged, even though it may at the same time tend to prove the commission of other criminal offenses.

In 45 Am. Jur. 406, Receiving Stolen Property, §19, the general rule and the exceptions thereto are stated, as follows:

"In prosecutions for receiving stolen goods, as· in criminal cases generally, the general rule is that evidence of the commission of offenses other than that charged is irrelevant, incompetent, and inadmissible. There are, however, certain well-established exceptions to this rule, recognized in order that all relevant facts and circumstances tending to establish any of the constituent elements of the crime charged may be made to appear. By virtue of such exceptions, evidence of other similar transactions, even though tending to show guilt of other crimes, is admissible in proper cases for the purpose of proving the identity of the accused as the guilty person, the guilty knowledge or intent of the accused requisite to commission of the offense charged, motive, or the existence of a criminal scheme or systematic plan embracing the commission of such offense as well as another or others."

See, also, Notes (1936) 105 A.L.R. 1289 *et seq.*

This court has frequently announced the general rule and has just as often pointed out the exceptions thereto. In *State v. Kritzer*, 21 Wn. (2d) 710, 152 P. (2d) 967, we said:

"The general rule is that, when one is on trial charged with a specific offense, evidence of the commission of other crimes by him is not admissible, because such proof is not necessary and its only effect is to prejudice the jury against the accused by showing that he is predisposed to the commission of crimes. However, there are exceptions to this general rule, and one of them is that, when the element of intent on the part of the accused is involved in the offense charged, evidence of other and related offenses having a bearing upon the one charged is then properly received. [Citing cases.]"

Other cases illustrating the exceptions to the general rule are *State v. Shea*, 78 Wash. 342, 139 Pac. 203; *State v. Linden*, 171 Wash. 92, 17 P. (2d) 635; *State v. Shay*, 186 Wash. 154, 57 P. (2d) 401; *State v. Hussey*, 188 Wash. 454, 62 P. (2d) 1350; *State v. Bradley*, 190 Wash. 538, 69 P. (2d) 819.

In *State v. Barton*, 198 Wash. 268, 88 P. (2d) 385, appears the following statement listing the exceptions to the rule:

"The exceptions to the rule that evidence of a collateral crime is inadmissible to show either guilt or that the defendant would be likely to commit the crime for which he is on trial are motive, intent, identity, a common scheme or plan, and absence of accident or mistake. 1 Wharton, Criminal Evidence (11th ed.), 490."

In the case at bar, the amended information charged that appellant wilfully, unlawfully, and feloniously did buy, sell, receive, and aid in concealing the articles of property therein described, with intent to deprive the respective owners thereof. The state, of course, had the burden of proving that the acts were committed with such intent.

Concededly, the mere act of buying, selling, or receiving stolen property does not of itself inherently involve the element of intent, since such act could be committed innocently, mistakenly, or in good faith. 45 Am. Jur. 391, Receiving Stolen Property, § 8. Moreover, one who is accused of a crime is entitled to the presumption of innocence until found guilty beyond a reasonable doubt, and should be accorded the benefit of all reasonable inferences from the evidence. It was therefore essential, in this case, that there be proof of wrongful intent, and, to establish such intent, evidence of other similar offenses, closely related thereto in time and other respects, was relevant and admissible.

In this connection, appellant further contends that the word "hot," as used by appellant and the detectives at the time and place of the arrest and search, does not necessarily mean "stolen," but may mean simply that the particular article is "physically warm." From this, he argues that the use of such word is insufficient, without further

proof, to impress upon the article the character of stolen goods.

The word "hot," when used as an adjective to modify a noun denominating some article of personal property, may mean that the article is stolen property, that it has been acquired or produced unlawfully, or that it is dangerous to have it in one's possession. *People v. Morris*, 124 Cal. App. 402, 12 P. (2d) 679; *People v. Knott*, 52 Cal. App. (2d) 439, 126 P. (2d) 375; *United States v. Rappy* (C.C.A. 2), 157 F. (2d) 964; *State v. Blue Diamond Oil Corp.* (Tex. Civ. App. 1934), 76 S.W. (2d) 852; 41 C.J.S. 362.

It is clear from the record herein that the witnesses, as well as counsel for both parties, used the word "hot" as being synonymous with the word "stolen," and we are well satisfied that the jury so understood it.

Appellant's second point of his first assignment of error, upon which he claims that he is entitled to a new trial, is based upon certain testimony given by one of the police officers. Upon his direct examination, the officer was interrogated concerning the time, place, and circumstances under which he placed appellant under arrest, and the following testimony was given by him:

"Q. [By Mr. Vogel] Did you have a conversation with him there? A. Yes, I did have. Q. What was it? A. I said, 'You have been getting around with this long enough and you are under arrest.' Q. Then what occurred? A. Salle started to talk pretty rapidly and pretty fast. Mr. Warner: I'd like to interpose an objection to that last statement of the officer and ask the Court to strike it, the one immediately before this. It was posed intentionally. The Court: It may stand. Mr. Warner: Exception. I ask for a mistrial also. The Court: Are you making a motion? Mr. Warner: Yes. I am moving for a mistrial on the same matter that you said might stand. I want to preserve my record. The Court: You are referring — Mr. Warner: To the statement he originally made. The Court: That he was talking rapidly and fast? Mr. Warner: I don't want to repeat it here for emphasis, but it was one that was intentionally put in here. This man is a police officer; he knows what he is talking about. The Court: The motion will be denied. Mr. Warner: Exception."

In making its ruling, the trial judge obviously thought that appellant's counsel was objecting to the officer's statement that "Salle started to talk pretty rapidly and pretty fast," when, as a matter of fact, the objection was intended to be directed to the officer's statement to Salle that "You have been getting around with this long enough and you are under arrest."

We do not think that the remark was made for any ulterior purpose, as appellant seems to contend, but was in direct response to the question that had been asked of the officer. In any event, we do not believe that it was of such gravity as to result in a mistrial or to call for a new trial.

Furthermore, after counsel, later in the trial, had renewed his objection with reference to this last quoted statement of the officer, the trial court specifically told the jury that the statement would be stricken from the record and "you will disregard it entirely, dismiss it entirely from your mind, forget that it was ever said." If there was any impropriety in the officer's remark, we deem the court's admonition sufficent to deprive it of any prejudicial effect.

The third point of appellant's first assignment of error is directed to the admission in evidence of the wire recordings of the statements made by appellant in response to questions addressed to him by the police officer after appellant's arrest.

It appears that these recordings were first "played," or reproduced, before the court, in the absence of the jury, and it was found that some portions of them were indistinct. On the return of the jury into court, the recordings were again played, after the court had directed the jury to listen closely, saying "It is quite indistinct, and you will miss a lot of it, but you will get some of it."

Appellant argues in his brief that this evidence was inadmissible because (1) a proper foundation had not been laid therefor; (2) it was not shown that the recording was voluntary on the part of the appellant; and (3) the recording was not accurate, being too indistinct. However, the only objection interposed thereto by appellant at the trial

was on the ground of the indistinctness of the recording, and, consequently, this is the only objection that we will now consider.

■ In the record appears a transcript of the locution recorded upon the disc which was played before the jury by means of a phonographic device. This transcript is written in perfectly intelligible form, and we have no means of knowing what, if any, part of the recording was indistinct. But, in any event, the mere fact that some portion of it may have been inaudible would not render the entire recording inadmissible.

In *United States v. Schanerman* (C.C.A. 3), 150 F. (2d) 941, which was a bribery prosecution, it was held that the mere fact that certain portions of mechanically recorded conversations were less audible than others did not call for exclusion of what the jurors personally heard from the "playing" of the records. In the words of the court,

"There would be no more valid reason for exclusion of the mechanically recorded conversations than there would be for excluding competent conversations, overheard in part, by human witnesses."

Appellant's second assignment of error is directed against instructions numbered 9 and 13 given by the court.

Instruction No. 9 reads as follows:

"As I have instructed you, one of the essential elements of the crime with which the defendant is charged is knowledge on the part of the defendant at the time the property was received and concealed by him, if you believe that it was received and concealed by him, that said property had been stolen. You are instructed further, however, that that knowledge need not be that *actual and positive knowledge which is acquired from personal observation of the theft*, but it is sufficient if the circumstances were such as to make the defendant believe at the time he received and concealed the property that said property was stolen, if you believe it was received or concealed by him." (Italics ours.)

Appellant criticizes this instruction upon the ground that it permits, as one of the essential elements of the crime of receiving stolen goods, something less than actual and positive knowledge by the accused that the property was stolen.

Instructions in substantially the same language as that employed in the instruction quoted above were approved as correct statements of the law in *State v. Druxinman*, 34 Wash. 257, 75 Pac. 814, and *State v. Claassen*, 131 Wash. 598, 230 Pac. 825.

█ The instruction is in accordance with the generally accepted rule upon the subject, that it is not essential that there be actual and positive knowledge, but it will suffice if there is constructive knowledge through notice of facts and circumstances from which guilty knowledge may fairly be inferred. 45 Am. Jur. 390, Receiving Stolen Property, § 7; 53 C.J. 509, 510, Receiving Stolen Goods, §§ 20, 21.

█ Instruction No. 13, of which appellant complains, reads as follows:

"You are instructed that under the laws of this state, a defendant is a competent witness in his own behalf, but he may or may not take the witness stand as a witness at his option. No inference of guilt *or innocence* is to be drawn by you from the fact that the defendant fails *or refuses* to take the witness stand as a witness in the case." (Italics ours.)

Appellant contends that the italicized words "innocence" and "refuses" were incorrect statements of the law and constituted prejudicial error.

Although it was unnecessary to include the word "innocence" in the instruction, its use was not improper, nor did it inject into the instruction an incorrect statement of law. *Affronti v. United States* (C.C.A. 8), 145 F. (2d) 3; *United States v. Fleenor* (C.C.A. 7), 162 F. (2d) 935.

In the *Affronti* case, *supra*, the court stated that an instruction containing the phrase "guilt or innocence" amounted to nothing more than a statement that the defendant was "neither helped nor hurt by his failure to testify, which was true." In the *Fleenor* case, *supra*, the court held that an instruction containing that same phrase was correct and that there was no error in giving such instruction.

As for the word "refuses," found in the instruction given by the court, we see no objection to the use of it, and cer-

tainly it cannot be said that its use was prejudicial. In fact, the phrase "fails or refuses," as used in the instruction, was borrowed from Rem. Rev. Stat., § 2148 [P.P.C. § 127-1], prior to its amendment by Rules of Practice 12 (Rem. Rev. Stat. (Sup.), § 308-12 [P.P.C. § 93-27].

Appellant's third assignment of error is predicated upon the refusal of the trial court to give certain requested instructions.

Two of these instructions, which appellant insists should have been given, contained statements to the effect that, to warrant a conviction of the appellant, the state must prove that appellant received the property or some part thereof from the person or persons who stole it, or from some one acting for or on behalf of such thief.

These pronouncements in the requested instruction are not correct statements of the law. The offense described in, and denounced by, the statute is not that of receiving stolen property from the thief, himself, but of receiving such property from any person whomsoever, with knowledge that it was stolen. To constitute the offense, it is not necessary that the goods be received from the thief or any particular person, provided the other essential elements of the crime are present. *Kirby v. United States*, 174 U.S. 47, 43 L. Ed. 890, 19 S. Ct. 574; *Wertheimer & Goldberg v. State*, 201 Ind. 572, 169 N.E. 40, 68 A.L.R. 178; *State v. Minnick*, 113 Kan. 385, 214 Pac. 111; *Shuttles v. Commonwealth*, 190 Ky. 176, 227 S.W. 154; *Commonwealth v. Grossman*, 261 Mass. 68, 158 N.E. 338; *State v. Fink*, 186 Mo. 50, 84 S.W. 921; *State v. Sakowski*, 191 Mo. 635, 90 S.W. 435, 2 Ann. Cas. 751; *People v. Marino*, 271 N. Y. 317, 3 N.E. (2d) 439, 105 A.L.R. 1283; *Norton v. State*, 119 Neb. 588, 230 N.W. 438; *Smith v. State*, 59 Ohio St. 350, 52 N.E. 826; *Yeargain v. State*, 57 Okla. Crim. 136, 45 P. (2d) 1113; 45 Am. Jur. 386, 388, Receiving Stolen Property, §§ 4, 7; 53 C.J. 507, Receiving Stolen Goods, § 15.

Appellant requested a number of other instructions, but these, in our opinion, were substantially and sufficiently covered by instructions which the court gave the jury. It

was, therefore, not error to refuse to give these requested instructions. *Luna de la Peunte v. Seattle Times Co.*, 186 Wash. 618, 59 P. (2d) 753, 105 A.L.R. 932.

Appellant's fourth and last assignment of error is that the trial court erred in denying appellant's challenge to the sufficiency of the evidence and his motion for dismissal of the case on all counts. This assignment presents nothing new, and the argument thereunder is simply a recapitulation of the contentions previously disposed of in this opinion.

The judgment is affirmed.

JEFFERS, C. J., BEALS, MALLERY, and HILL, JJ., concur.