920

THE STATE OF WASHINGTON, *Respondent*, v. NEUMAN RYE,
*Appellant*.

*Donald W. Frey,* for appellant (appointed counsel for
appeal).

*Henry R. Dunn, Prosecuting Attorney,* for respondent.

SWANSON, J.—Two events occurring within the same city and separated in time by only 4 months furnished the background for a charge and conviction of grand larceny. First, in January of 1968, while Harry Martin was vacationing in Hawaii, his Longview home was ransacked and many personal belongings taken. Second, a police search of Neuman Rye's Longview home in May of the same year disclosed the items taken from Martin's house. Neuman Rye was then charged with grand larceny by way of receiving stolen property.[1] On March 25, 1969, a Cowlitz County jury returned a verdict of guilty. From the judgment and sentence entered pursuant to the verdict, Rye appeals.

Appellant contends primarily that the trial court erred in denying his motion to suppress the evidence obtained in the search of his home. He claims the clothing, electrical appliances and miscellaneous household items[2] were found there as the result of an unlawful search. It is conceded that the search was conducted without a warrant and not incident to a lawful arrest, so that the validity of the search must rest on the alleged consent given by Mrs. Rye, appellant's wife. Appellant's argument in support of his first assignment of error is to the effect that (a) the state failed to meet its burden of showing that the consent was voluntarily given, (b) a wife cannot consent to a search of the home without her husband's consent, (c) the alleged consent given here was invalid because Mrs. Rye was not given the "Miranda warnings,"[3] and (d) the search went beyond the scope of the alleged permission granted by Mrs. Rye.

---

[1] See RCW 9.54.010(5) and RCW 9.54.090(6).

[2] The property found in appellant's home identified as the missing items from the Martin home consisted of men's suits with Harry Martin's name inside, sweaters and white shirts, women's furs, dresses and purses, a mink coat, a floor polisher, coffee urn and hair dryer, candlestick holders, and various miscellaneous items. Testimony was presented that the value of these items exceeded $75 as required by RCW 9.54.090(6).

[3] *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).

■ The burden of proving there was a truly voluntary and fully informed consent rests upon the state. *State v. Greco,* 52 Wn.2d 265, 324 P.2d 1086 (1958); *McNear v. Rhay,* 65 Wn.2d 530, 398 P.2d 732 (1965). The pivotal question here is, then, whether the state met the burden defined in *United States v. Kidd,* 153 F. Supp. 605, 609 (W.D. La. 1957), and adopted in *State v. Greco, supra* at 267; *accord, McNear v. Rhay, supra* at 537:

> Such proof must be made by clear and positive evidence, and it must be established that there was no coercion, actual or implied. The Government must show a consent that is unequivocal and specific, freely and intelligently given. If the consent actually given is made under compulsion, either "physical or moral", it may not serve to validate a search and seizure otherwise invalid for want of a proper warrant.

(Footnotes omitted.)

It was not disputed at the pretrial hearing on motion to suppress that a Longview policeman and a sheriff's deputy went to the appellant's home without a warrant to search for the property stolen from the Harry Martin residence. Appellant was in Nevada at the time, but, in his absence, his wife permitted the officers to enter the house. They then told Mrs. Rye they were looking for stolen property and wanted to search the house. Deputy Sheriff Covington testified on cross-examination:

> A  I asked for permission to search the residence and she said her husband would not like it. I asked her again and she said it again that her husband would not like it. I said fine, we would get a search warrant, and she said then she would permit it.

The state contends Mrs. Rye consented to a search of the premises when she told the investigating officers to "go ahead and find it." She admitted saying:

> A  When they said they would go up and get a search warrant *I said if you think there is anything in this house that is stolen from the Harry Martin residence, you go ahead and find it. I am not going to help you.* I sat on the bed and didn't help them or say anything. But when

they found my house robe in the closet I said to put it back. It wasn't stolen.

(Italics ours.)

Appellant's contention that the consent was coerced is based primarily on Mrs. Rye's testimony that the officers threatened to take her baby away from her and arrest her if she did not allow the search. In answer to this assertion, Sergeant McLaughlin of the Longview Police Department stated:

A   I made no mention about the baby whatsoever.

He testified further on cross-examination:

A   She wasn't threatened by me or Deputy Covington in my presence.

Deputy Covington said:

Q   Did you threaten that she would go to jail?
A   I did not.
Q   In your presence did Mr. McLaughlin?
A   He did not. He made no threats whatever.

Mrs. Rye also testified that the officers told her that if she would not grant them the right to search the home, one of them would stay in the home with her until the other obtained a search warrant. The officers stated they only told her that if she insisted on a search warrant, one of them would remain in the area while the other went to obtain the warrant. Deputy Covington testified:

Q   You didn't say you would stay in the house?
A   No, I didn't. I said I would stay in the area, and she told us to go ahead if we were going to do that.

Sergeant McLaughlin corroborated this testimony, saying:

A   . . .   At this time Deputy Covington said he would remain in the area and I would get the search warrant, and she said if this was what we were going to do we might as well go ahead.

■   After hearing this conflicting evidence regarding appellant's claim that the consent was coerced, the trial court said:

The Court does not feel the search was a result of threats even though Mrs. Rye might have had reason to

believe 'and to have apprehension about her own situation.

The trial judge observed the witnesses and determined their credibility. He believed the two officers and disbelieved Mrs. Rye's claim of coercion. Our Supreme Court, in *McNear v. Rhay, supra* at 535, said, in considering a claim that the consent to search was coerced:

> We are prone to attach great significance to the factual findings of the trial court upon the issues referred to it, particularly where such findings arise out of contradictory testimony. Nevertheless, when fundamental constitutional rights are in issue, we are compelled to make our own independent examination of the testimony, the findings, and the record for the purpose of determining whether there has been a denial of due process of law. *Haynes v. Washington,* 373 U.S. 503, 10 L. Ed. (2d) 513, 83 S. Ct. 1336 (1963); *Ker v. California,* 374 U.S. 23, 10 L. Ed. (2d) 726, 83 S. Ct. 1623 (1963); *State v. Rutherford,* 63 Wn. (2d) 949, 389 P. (2d) 895 (1964).

We, too, attach significant weight to the trial court's findings, but we cannot blindly accept them. We must carefully review the record brought before us. Even though Mrs. Rye's statement indicated no desire to cooperate, it does not give rise to a presumption that her consent was the result of threats or fear of reprisal. Our Supreme Court, in *State v. Lyons,* 76 Wn.2d 343, 346, 458 P.2d 30 (1969), commented upon a similar problem by stating:

> Bowing to events, even if one is not happy with them, is not the same thing as being coerced.

A close examination of the record satisfies us that even though Mrs. Rye's consent was given reluctantly, it nonetheless was given with full knowledge of what was involved and by the exercise of her own free will unhampered by either compulsion or threat.

Appellant next contends that his wife could not consent to any search that affected him, *i.e.,* to allow his wife to consent to a search of his home in his absence and without his consent would have the effect of giving the state evi-

dence of a privileged communication in violation of RCW 5.60.060 (1), which states in part as follows:

> A husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the husband;
> . . .

There is no merit in this argument which attempts to liken a wife's consent to search the home to a privileged communication between husband and wife. Indeed, no authorities are cited in its support.

■ The rule permitting one occupant of a jointly occupied dwelling to consent to a search affecting the other was recently set forth in *State v. Bellows,* 72 Wn.2d 264, 268, 432 P.2d 654 (1967):

> Where two persons have equal right to the use or occupancy of the premises, either one can authorize a search and the evidence thus seized can be properly admitted into evidence against either or both parties. [Citations omitted.]

Furthermore, in the only case cited where the question was considered, *In re Lessard,* 62 Cal. 2d 497, 42 Cal. Rptr. 583, 399 P.2d 39 (1965), the California Supreme Court held that the subsequent estrangement or separation of the husband from the wife did not destroy the wife's capacity to consent.[4]

■ Next, appellant contends the search was invalid because Mrs. Rye was not advised of her constitutional rights as required by *Miranda. State v. Lyons, supra* at 504, is dispositive of this issue:

> No cases are cited nor have we found any that require officers investigating a crime to preface a request to search premises with a recital to the owner or occupants of their constitutional rights (presently known as the Miranda warnings).

The courts which have had occasion to deal with this

---

[4]Mrs. Rye was temporarily estranged from her husband at the time of the search in the instant case.

issue have with complete unanimity decided it adversely to the appellant's contention.

(Footnote omitted.)

Appellant then says that the search extended beyond the bounds included within the consent. This argument is also without merit, for the consent was given to a search of the house and contained no limitations. Mrs. Rye was present at all times except when the officers were in the garage.[5] There was no contention that she withdrew her permission or indicated any subsequent limitation upon the extent of the search. The state advanced the contention that the search in the instant case was not one proscribed by the constitution, since evidence of the crime was in plain view.[6] See *State v. Martin,* 73 Wn.2d 616, 440 P.2d 429 (1968).

Appellant's second assignment of error is directed to the admission of the testimony of Harry Martin, owner of the stolen goods. Mr. Martin testified at the first trial, and the court reporter was permitted to read his testimony at the second trial. This procedure, appellant claims, violates the rule of *State v. Ortego,* 22 Wn.2d 552, 157 P.2d 320, 159 A.L.R. 1232 (1945), which states that a party wishing to use the testimony of a witness given at a prior trial in a criminal action must show to the court's satisfaction that the witness, whose testimony is sought to be produced, is unavailable because of insanity, death, or some physical disability, or that he is absent from the jurisdiction without the connivance of the party seeking to introduce the testimony, or that he cannot be found after diligent search. The state satisfied the court that Harry Martin was absent from the jurisdiction without its connivance, and the trial court so found. Ample evidence exists to support this conclusion.

---

[5]We do not consider whether or not consent to search the house includes consent to search the garage. Appellant has not raised this specific issue. Even assuming the items discovered in the garage are the fruits of an illegal search, no prejudice can be shown, for the record discloses that the value of the items found in the house exceeds $75.

[6]It should also be noted that the candlestick holders were upon the mantlepiece, and in plain view of the officers when they entered the premises as were the bedspread and other items.

Appellant next assigns error to the testimony of a police sergeant that, in addition to the effects taken from the Martin home, there was a stolen Yamaha motorcycle discovered in the appellant's garage. This testimony was objected to and sustained. The trial court instructed the jury to disregard the testimony given regarding the motorcycle, and the court then inquired of defense counsel if anything more should be added. Defense counsel responded by saying, "That is sufficient, Your Honor. Thank you."

The state contends this evidence should have been admitted to show the appellant's intent to conceal stolen property. It was pertinent, says the state, to show a stolen Yamaha motorcycle in order to establish one of the elements of the crime charged. This is an exception to the general rule that evidence of the commission of offenses other than that charged is irrelevant. *State v. Salle,* 34 Wn.2d 183, 208 P.2d 872 (1949). Whether this evidence was admissible, on the basis of the exception stated, need not be determined. It was excluded by the trial court by an instruction satisfactory to the appellant. The court's admonition was sufficient to cure it of prejudice.

■ The final contention made by the appellant is that the state failed to present any direct evidence establishing that the appellant knew the property in his possession was stolen or that appellant received the property with a felonious intent to deprive or defraud the owner. This contention is also without merit. We have carefully reviewed the record and find ample evidence, though primarily circumstantial, to support the jury's finding. It is not essential that there be actual and positive knowledge that the goods were stolen. It is sufficient if there is constructive knowledge through notice of facts and circumstances from which guilty knowledge may be inferred. *State v. Salle, supra.* The jury considered these facts. Appellant said he was only storing these articles for a Mr. Wettle. This explanation could reasonably be rejected when considered in light of the fact that Wettle was a close friend of the defendant and a former cellmate for 18 months at Walla Walla State Peni-

tentiary. The appellant Rye also knew that Wettle was no stranger to crime. He knew Wettle had been convicted of four burglaries. Wettle's statement to the appellant that the items were purchased from a pawnshop in California and that he wanted Rye to store them is such an unusual account that a reasonable person would have been put on notice.

The jury also had a right to test appellant's credibility in view of his five convictions of burglary, as well as his November, 1968, conviction of larceny by bailee. In addition, the goods that Wettle asked to store in the Rye residence, according to appellant's testimony, were not of the nature one would expect to find in a pawnshop. The goods included a mink coat, boxes of women's handbags, pictures, candlestick holders, a bedspread, and numerous other personal items. Further, the location in which the goods were found opens to question the assertion they were being stored. The candlestick holders were on the mantle in the appellant's home, the jewelry was found on the dressing table in appellant's bedroom, and the bedspread was in use on appellant's bed. Also, the white dress shirts taken in the burglary from the Martin residence were found in the appellant's dresser drawers, and the appellant admitted to wearing some of these shirts which had the owner's name in the collar. Ample evidence supports the finding of intent and the jury's verdict of guilty. We find no error in the trial record.

Judgment affirmed.

JAMES, C. J., and FARRIS, J., concur.